(34 South. 39.)

No. 14,481.

KIMBELL v. HOMER COMPRESS & MFG. CO.*

(March 2, 1903.)

INJURY TO EMPLOYÉ—DEFECTIVE APPLIANCES.

1. Plaintiff's minor son, a day laborer, was instantly killed while engaged in the service of defendant, assisting in the work of placing in position a heavy steam boiler. It is shown that with proper appliances, skill and care the work could have been done in safety. Because of the want of these defendant is held liable.

(Syllabus by the Court.)

Appeal from Judicial District Court, Parish of Claiborne; John Thomas Watkins, Judge, vice Benjamin P. Edwards, Judge, recused.

Action by Teemer Kimbell against the Homer Compress & Manufacturing Company. Judgment for defendant, and plaintiff appeals. Reversed.

McClendon & Seals, for appellant. Richardson & Richardson, for appellee.

BLANCHARD, J. Bebee Kimbell, a young negro, nineteen years of age, was employed as a day laborer by defendant company.

The company was engaged in putting in boilers for its compress, and the employment of Kimbell was in connection with this work. He and five or six other negro men were so employed under the direction of white men in the service of the defendant.

Kimbell was entirely inexperienced. He had been in the service of the company less than two days.

Two boilers had been brought by rail to the town of Homer, where the compress was being erected.

They were unloaded from the cars on a platform located beside the track.

Adjacent to this platform, and across it from the railroad, was a partially constructed brick boiler house—a part of the compress. The boilers were to be transferred across the platform and into the boiler house, where they were to be set permanently in position.

The platform supported the boilers up to the front entrance of the boiler house, the front wall of which was left incomplete so as to admit the boilers.

On the interior of the boiler house what is called "cribbing" had been erected, which was designed to support the boilers after leaving the platform and while on their way to their permanent location inside the boiler house.

The first of the boilers had been transferred over the platform and through the entrance on to the cribbing within. It was being pushed and rolled end ways. On top of the cribbing were placed two sills, and on these sills were placed small, round, wooden sticks to act as rollers.

On to these rollers the boiler was pushed, and while within the boiler house and before reaching the place of its location, control was lost of it, it rolled from the cribbing with great force and violence and brought up against the south wall of the boiler house, where it caught and pinioned and instantly crushed to death Bebee Kimbell.

This suit is the sequel. It was brought by the father and mother of the boy, who are people in lowly circumstances. They claim damages in the sum of $5,000.00 for and on account of his death, and a small sum for wages due him.

The averment is made that the casualty was the result of gross negligence and want of skill on part of the superintendent and foreman of defendant company, under whom Kimbell worked, and to whose orders he was subject.

It is further averred, substantially, that there was want of proper appliances to do the work with safety to those employed in its execution; that proper protection to the laborers against injury was not provided; that Kimbell was inexperienced to the knowledge of the officials of the company who hired him; that the danger to which he was exposed was not apparent; and that he had not been warned against danger.

The exception of no cause of action filed was, we think, properly overruled.

The answer of defendant admits the employment of Kimbell and that he was killed while assisting in the work of placing the boiler. Denies all the allegations tending to fasten liability upon it, and avers that while in no way responsible for the casualty the

---

*Rehearing denied March 30, 1903.

company did, as an act of charity, donate the burial expenses of the deceased, purchased the coffin and other things to give him a decent burial and paid for same with the distinct understanding with the plaintiff herein (father of the boy) that there would be no claim or litigation on account of the accident.

The case was tried by jury, who returned a verdict by 9 to 3 in favor of the defendant, rejecting the demands of the plaintiff.

The latter appeals.

Ruling—It is not necessary to notice that part of the answer of defendant relating to what the company did in the way of paying the burial expenses of the deceased, further than to say it in no way meets the requirements of Rev. Civ. Code, art. 3071, in respect of those essentials necessary to constitute a transaction or compromise for preventing or putting an end to a lawsuit.

We rise from a study of the evidence convinced that a showing has been made which entitles plaintiff to recover.

The work of removing the first boiler, from where the railroad unloaded it to the place designed for it inside the boiler house, was not done with that regard for the safety of the laborers employed in that service which should have been the case.

The boiler became dangerous because of its weight and unwieldiness after being placed upon the cribbing inside the boiler house. Sufficient care was not taken to prevent its getting beyond control and rolling off the crib work and falling down into the space left between the crib work and the south wall.

This could have been prevented by filling that space, which was only a few feet wide, with crib work of the same height and strength of that upon which the boiler rested, and placing upon it sills like those used on the cribbing where the boiler was. The evidence is the additional cost of this would have been only a few dollars.

Or it could have been prevented by using beams placed slanting, one end of same resting against the top of the wall, the other end under the boiler. These would have acted as safety props and caught the boiler when, on account of losing its equilibrium, it began to move or roll towards one side or the other.

It was the duty of the master to have foreseen just what did take place, to have apprehended danger from that source, and to have guarded against it.

The transferring of the boiler to its place could easily have been effected in safety to all engaged in the work.

The second boiler was transferred and placed without accident or injury to any one, and in doing it timbers or beams were placed obliquely, as described above, with one end resting against the wall and the other against the boiler.

The superintendent of defendant company, on the stand as a witness for the defense, admitted, on cross-examination, that such beams were so placed when he came to put the second boiler in place, and that they were put there to prevent the boiler from rolling. And he further admitted that nothing of the kind was used in the attempt to place in position the first boiler.

While he endeavors to minimize the effect these beams, in his opinion, had or would be expected to have, the fact remains that they were used the second time and the boiler placed without accident, while they were not used the first time and accident and injury and death did occur.

He testified the placing of the beams, in the work of putting the second boiler in place, did away with the scotches used in the placing of the first boiler, and that it was the scotches which let the first boiler slip and caused it to roll off.

The answer raises no issue of contributory negligence on part of the dead man.

Neither does it raise any issue involving the "fellow servant" doctrine.

But, anyhow, there is not sufficient evidence to exculpate the company on these issues, were the same raised.

This brings us to the question of damages—how much to award.

Article 2315 of the Revised Civil Code, as amended by the Act of 1884, gives two causes of action to the surviving parents of a minor child, who has met with violent death under circumstances which entail liability upon the person or corporation in whose service such child was at the time.

One cause of action is that which the parents inherit from the child. Such a cause of action is declared on when the parents

sue for such damages as the child, itself, could recover on account of its sufferings, had it recovered. Rice's Case, 51 La. Ann. 114, 24 South. 791.

The other cause of action is that which the law gives to the parents themselves—to recover the damages sustained by them by the death of the child.

We understand the present suit to embrace both actions. But the boy Kimbell was instantly killed; his skull was crushed between the boiler and the brick wall. He did not live to suffer and then die, leaving a heritable claim to his parents arising on account of his sufferings.

As to the other cause of action, considering all the circumstances (unnecessary to detail) which enter into the case and which affect the question of compensation, we have concluded to allow plaintiffs the sum of one thousand dollars—this to include the small amount which was due the deceased as wages.

For the reasons assigned, it is ordered, and decreed that the verdict and judgment appealed from be set aside and annulled, and it is now adjudged and decreed that plaintiffs do have and recover of the defendant one thousand dollars, with 5% interest thereon from this date, and all costs in both courts.