## MEAUX v. GULF INS. CO. et al.*

### No. 1850.

Court of Appeal of Louisiana. First Circuit.

June 14, 1938.

Lewis & Lewis, of Opelousas, for appellants.

James Domengeaux and Welton P. Mouton, both of Lafayette, for appellee.

LE BLANC, Judge.

On March 17, 1937, between seven and seven :thirty o'clock in the evening, plaintiff herein, Elie Meaux, was returning to his home in his horse-drawn buggy, from a visit to a physician in Dusson, whom he and his wife had gone to consult for their infant child who was·also in the buggy with them. At about the hour stated, he was on the outskirts of the city of Lafayette on the paved highway, driving in the direction of Breaux Bridge, when his horse and buggy were run into by a Chevrolet sedan automobile owned and being driven at the moment by one of the defendants herein, Frank P. Patin, who was going in the opposite direction, that is towards Lafayette. As a result of the crash, plaintiff's infant son sustained several fractures of the skull and

*Rehearing denied July 27, 1938.

he died shortly after midnight. Plaintiff himself sustained severe injuries consisting principally of fractures of the right arm and leg, and his wife also sustained a fracture of the left ankle. She claims also to have suffered several other serious injuries which caused a first degree anteflexion of the uterus and a displacement of the uterus to the right. Plaintiff's horse was instantly killed and his buggy completely demolished.

The present litigation ensued as a result of the personal injuries sustained by the plaintiff herein as well as other damage incurred because of medical and hospital bills for himself and his wife and the burial of his child. The litigation involves three separate suits, which for the purpose of trial below were consolidated and were again consolidated before this court for argument and submission.

The defendant Patin carried a policy of public liability insurance with the Gulf Insurance Company which is also made defendant in all three cases, and against which judgment is prayed for in each, in solido, with him.

The charges of negligence made against the defendant Patin and his consequent liability and that of his insurer, and the denial of the same as well as the plea of contributory negligence against the plaintiff and his wife, are the same in all three petitions and answers. Patin is charged with negligence in driving at a reckless and excessive rate of speed, in not keeping a proper lookout and with incompetency as a driver of an automobile in his failure to exercise ordinary care. He is also charged with particular negligence in his failure to have observed "the law of the road" when he crossed diagonally from his lane of travel over the black stripe in the center of the highway, and in running into plaintiff's buggy which occupied its right hand lane of travel.

The defense of Patin and his insurer consists of a denial of negligence altogether on the part of Patin, and a plea of sudden emergency under which, it is urged that he is relieved of negligence if any be shown. The facts alleged to support this plea are to the effect that as he was proceeding on the highway, two automobiles passed by him going in the opposite direction and just at the moment that they passed him, he observed another automobile with brilliant head lights and traveling at a rapid rate of speed approaching the highway from an intersecting road or street to his left; that on observing that this car was about to enter the highway he signalled for dimmers but his signal was not heeded by the driver of that car, whereupon he became blinded by its lights and although he attempted to stop his car by applying all of his brakes, he was unable to do so before it had collided with the plaintiff's buggy. The defendant's plea of contributory negligence against the plaintiff Elie Meaux consists of an allegation that he had no lights attached or fixed to his buggy as required by the law of this state, and also that he became confused and panic stricken in the emergency presented, and instead of guiding his horse on the extreme right hand side on to the wide shoulder of the highway, proceeded on the paved portion near or beyond the center line thereof, wholly oblivious to his own danger and the danger of the occupants of the buggy with him. Mrs. Meaux is charged with contributory negligence not only in riding with her husband in the buggy without any signal or warning lights attached to it but also in failing to warn her husband of the approaching danger which, like him, she had every opportunity of observing. It is further pleaded against her that she was engaged at the moment in a joint mission or venture with her husband and that his negligence is for that reason imputed to her.

In this case, the plaintiff's demand is for the sum of $12,864.00 itemized as follows:

| | |
|---|---|
| Damage to buggy.............. $ | 100.00 |
| Loss of horse................. | 100.00 |
| Anguish, pain and suffering.... | 4,000.00 |
| Injury to leg and arm and resulting impairment ............. | 7,900.00 |
| Laceration and scar on forehead | 100.00 |
| Doctors and hospital bills...... | 664.00 |
| | $12,864.00 |

In the case of the plaintiff's wife, Mrs. Alma Martin Meaux, the demand made by her is for the sum of $10,000.00 which is itemized as follows:

| | |
|---|---|
| Pain and suffering, mental anguish shock and nervousness.. $ | 3,000.00 |
| Injury to ankle................ | 1,000.00 |
| Displacement of Uterus and sterility ................... | 5,000.00 |
| Disability to perform duties as house keeper .............. | 1,000.00 |
| | $10,000.00 |

She is joined in her suit by her husband who seeks to recover on his own behalf the sum of $371.00 incurred for her treatment.

In the suit of both Mr. and Mrs. Meaux for the death of their child the demand is for $3,500.00 on the part of each and the additional sum of $182.68 consisting of a doctor's bill for $25.00 and burial expenses amounting to $157.68.

In each of the cases a trial by jury was prayed for. After it was agreed to consolidate them for trial however, only one jury was impanelled and heard the testimony, but separate verdicts were rendered in each. In the present suit, the verdict was for the sum of $8,314.00. In the suit of Mrs. Meaux, the jury awarded her the sum of $4,500.00 and it also allowed the husband's claim for expenses incurred on her behalf in full. In the suit of both of them for the death of their infant child, the award was for the sum of $2,500.00 to each, plus the sum of $182.68 which was allowed the father for expenses. All three verdicts were approved by a judgment rendered and signed in each case. In each of the three cases the defendants have taken a suspensive appeal, and in two of them, the plaintiffs have answered asking for an increase in the amounts allowed in the judgments below. In the third case, that is the one by both parents for the death of their child they express themselves as being satisfied with the amount of the award and have not answered.

We experience but little difficulty in agreeing with the verdicts of the jury and the judgments insofar as they condemned the defendants to pay damages in each case. The negligence of the defendant Patin was clearly proven in our opinion and liability on his part and that of his insurer followed as a consequence.

The only eyewitnesses to the accident were the occupants of the two vehicles, that is the two plaintiffs and the defendant Patin. The testimony of Mr. and Mrs. Meaux is to the effect that on the same evening of the accident they had left the village of Dusson at about sundown, and that upon reaching the village of Scott which is between Dusson and Lafayette, Meaux lit a lantern and attached it to the left hand side of the buggy in which they were driving. They traveled always on the right hand side of the highway, at times occupying the shoulder part of it entirely. Just at the moment of the accident they are positive that the two right wheels of the buggy were on the shoulder, which necessarily placed the buggy far on to the right hand side of the concrete slab of the highway. A witness named Percy Labbe who testified that just a moment before the accident he had passed the buggy, corroborates their testimony to that extent. They further testify that they noticed the automobile, which turned out to be that of Patin, approaching them from the opposite direction, going at a fast rate of speed and that suddenly he left his lane of travel on his right hand side of the concrete slab and came headlong into the side of the road on which they were traveling. Meaux says that he attempted to jerk his horse further over to the right, but that he could not do so before the Patin car had run head-on into them. They were both thrown on to the pavement and rendered unconscious, and remember nothing of what transpired thereafter.

The defendant Patin testified as a witness first under cross examination and then on his own behalf. Summed up, his testimony is that he had left Breaux Bridge to go to Lafayette in his car which he says was equipped with good brakes and had good lights. He estimates that he was traveling at about 35 to 45 miles an hour and was occupying the north side of the paved portion of the highway which was the proper side for his car to be traveling on. He states that just prior to the accident, an automobile with bright lights entered the highway from an intersecting road on his left, and therefore approached him from the opposite direction to that in which he was going. He explains that he dimmed his lights and signalled the approaching car to do likewise, at the same time releasing his foot from the accelerator in order to reduce his speed. He focused his vision while he was doing this on the concrete slab and when he raised it again he observed that the driver of the approaching car had not heeded his signal and he became blinded from the glare of that car's headlights. He says that he immediately applied his brakes and did everything in order to stop his car, but all to no avail before he ran into the horse and buggy. He is evasive in answering questions concerning the side of the road he occupied at the exact moment of the collision and finally states that he does not know whether or not he was occupying the lane of travel he should have been on or where he was in relation to the black stripe in the center of the concrete slab. Several witnesses tes-

tify concerning rather damaging admissions of negligence made by him immediately following the accident, and these he does not seriously dispute.

The physical facts having to do with the location of the bodies of Mr. and Mrs. Meaux and that of their child, as well as that of the horse which was killed, and also the position occupied by the automobile on the highway, after the accident, as testified to by numerous witnesses, all point to the negligence of Patin in having left his lane of travel on his right hand side of the road, and having crossed over to his left, running at the same time at a too fast rate of speed under the circumstances which presented themselves, as being the sole cause of the accident.

The evidence concerning the presence of another automobile on the highway at the time is in such a state as to leave a serious doubt on that point, but even if it be conceded that there was a car approaching his from the opposite direction and that Patin was blinded by its lights, under his own testimony, this blinding occurred when the other car was at a distance of some three city blocks or more from him, and that being so, it is apparent that he had ample time in which to have taken more precaution than he did to bring his car under control in order to meet any emergency which might present itself because of his having become so blinded. Under the well recognized rule that the driver of an automobile should always have his car under such control, when driving with his headlights on, so as to stop it within the distance which his lights project in front of him, the defendant Patin is bound to be held negligent in this case. His counsel who also represent the insurance company, invoked and stressed on his behalf the rule of sudden emergency, under which the driver of a car is held only to the exercise of that degree of care which a reasonable man and prudent driver would exercise under similar circumstances, and that even though the course he followed in a sudden emergency was not the wisest and the safest, he nevertheless will be relieved of liability if he did exercise that degree of care. The rule, as has often been held, applies in cases in which the emergency created was not of the making of the one who invokes it. Considering the distance the car with the blinding headlights was from him at the time he first saw it, it is doubtful whether a sudden emergency existed at all in this case. At any rate, certainly the plaintiffs are shown to have had nothing to do with creating any and as against them, it is difficult to understand how the rule can be applied.

The defendants have not in our opinion produced any testimony on which the plaintiffs can be held guilty of contributory negligence. Much is said as to the probability of their having become confused also by reason of the car approaching Patin's from the opposite direction, but we are unable to understand how this car should have caused them any apprehension of danger whatever. Under their testimony which is uncontradicted, the accident happened so suddenly that they hardly had time to observe anything. As far as the charge of negligence based on the absence of a signal light on their buggy is concerned, the testimony seems to be rather in their favor that they had such light in the first place, and in the second place even though they did not, its absence in no wise, as far as we can see contributed to the accident.

On the question of liability therefore, as we have already stated, the case is clearly with the plaintiffs, and it now becomes necessary for us to discuss and review the various awards made in each case.

The question of quantum impresses us as being by far the most serious in all three cases. We might state at the outset that the award in each is found to be excessive and each judgment will necessarily have to be reduced. We take up for consideration first the damages claimed in the suit of the plaintiff Elie Meaux.

Mr. Meaux as we have already stated presented a demand totaling the sum of $12,-864.00, of which amount $12,000.00 is for pain and suffering, injury to his right leg and arm and resulting impairment and for laceration and scar on the forehead. The remaining amount of $864.00 is made up of one item of $664.00 for doctors and hospital bills, and $200.00 for the loss of his horse and buggy. Stripped of all technical and medical phraseology, the testimony shows that he suffered a fracture of the right fore-arm about two inches above the wrist, and a serious fracture of his right leg, this latter fracture involving two bones of the leg in the region of the knee. It was necessary that his leg and arm be placed in a plaster cast and he was confined in the hospital for twenty-three days. He kept the cast on his leg eighty-eight days, the evidence not showing how long the cast

remained on his arm. In addition to this he sustained a rather pronounced cut above his left eyebrow and a smaller laceration over his nose.

■ Mr. Meaux had a rather satisfactory recovery from the fracture of his right arm, although he still complains that he was left with a condition known as wrist drop. This condition he has not shown to our satisfaction, exists, as a result of the fracture. His recovery from the fractured leg was not as good, and according to the medical testimony, including that of the experts who testified on behalf of the defendants, he will be left with some disability. The estimates as to the extent of that disability range all the way from one-third to one hundred per cent. The experts who testified for the defendants are of the opinion that the disability could be almost entirely eliminated by the use of a built up heel on his right shoe or by the use of a brace, or by both. We are not prepared to hold that this man, who has to depend upon his manual labor alone for a living, should be classed one hundred per cent physically able in his present condition, even though these experts were correct that he could perform such work with the aid of some contrivance such as they suggest. We think that the testimony warrants the conclusion that he has a disability of probably forty per cent which we have to take into consideration in arriving at the amount of damages he is entitled to recover.

His testimony concerning his earnings in the past is very indefinite. The best that we can make out of it is that he was making a scant living for himself and his wife. They had had a child previous to the one who was killed in this accident, but it had died when yet in infancy. What it took to support him and his wife it is impossible to state as far as the record shows. He speaks of having made six bales of cotton the year previous to his injury but as he was working as a share farmer, and had to give a third of his crop to his landlord, that left him with only four bales. At the normal price of cotton it is readily seen that his earnings were less than a dollar per day, if we are to take the result of his operations for that year as a criterion. Taking all of these facts in consideration we would say, that for a man of his age and his limited capacities, an award of $4000 for his pain and suffering and the resulting disability from his injuries would be a fair and just compensation.

■■ The proof regarding the expenses he claims is by no means satisfactory. The doctors who treated him and who readily admit that the payment of their charges depends entirely upon the outcome of this suit, stated what their charges are so far and also include charges which they say are for future medical services. There is a bill of $275.00 also for hospital expenses. This bill is not detailed or itemized in any way and it strikes us as being rather high for services which may have been rendered to this patient for twenty three days hospitalization only. The same may be said with regard to the demand made by the plaintiff for the loss of his horse and buggy. He states that he paid $100.00 for each, but when asked how it was paid and to whom, he is very indefinite and even refers to having paid part of it in corn. How much corn, he is unable to state. The buggy was a second hand buggy when he bought it and with what knowledge we have of second hand buggies of these modern days, we hardly think that they are worth anything like $100.00. We have concluded to allow the plaintiff the sum of $425.00 for his doctors and hospital expenses and the sum of $75.00 for the loss of the horse and buggy, making a total allowance for all expenses of $500.00. The judgment in favor of Elie Meaux, plaintiff in this case, therefore will have to be amended by reducing the amount from the sum of $8,-314.00 to the sum of $4,500.00.

Next, we have to consider the claim made in the suit of Mrs. Meaux for damages for her injuries amounting to $10,000.00, coupled with which is the claim of her husband amounting to $371.00 for medical and hospital bills incurred on her behalf. Mrs. Meaux suffered a fracture of her left ankle. She claims besides that as a result of a fall on the buttock she also suffered a displacement of the uterus, and that from this injury she has become and will remain sterile. This last complaint is the basis of the greater part of her demand.

Mrs. Meaux was confined in the hospital the same length of time as her husband for her ankle injury. Her leg was also placed in a plaster cast in which it remained eighty-eight days. As far as we are able to understand from the record, she has had a good recovery and her fracture has entirely healed. Some six or seven months after the accident it was not even discernible in an X-ray picture.

As far as her other complaints are concerned, we are of the opinion that whatever condition Mrs. Meaux may be suffering from at this time, or was suffering at the time of the trial of her case, it is not shown by the testimony to be due to this accident. There is certainly no proof whatever sufficient to justify a finding that she is sterile. Her own medical experts agree with those for the defendant that there is nothing unusual or abnormal in the fact that she had not become pregnant between the time of the accident and the date of the trial. All the medical experts agree also that it is too conjectural for any doctor to say that she was sterile and that the injury she experienced was sufficient to produce sterility. The evidence does show that she is suffering from some female trouble and has some displacement of the uterus. But it is an undisputed fact that on the two occasions that she gave birth to children she experienced much difficulty and that both were forced deliveries, one of which had to be made with the instruments used on occasions of this kind. The testimony as we view it leans more on the side which indicates that the conditions found were the result of the troubles she experienced at that time rather than from any injury sustained in the accident.

The most that can be said therefore about her demand for damages for personal injuries is that she suffered a rather severe fracture of the left ankle, from which she has had satisfactory recovery and for this, together with the contusions and abrasions which she also suffered in different parts of her body, we believe that an award of $1,200.00 would be fair and reasonable.

As for the expenses incurred on her behalf which her husband seeks to recover, the proof is not a bit more satisfactory than was that in his own case and to which we have already referred. We have decided to make an allowance of $150.00 for both doctors and hospital expenses.

This brings us finally to the demand made by both parents in the suit for the death of their child. They each claimed $3,500.00, and in addition the husband claimed $182.68 for medical and burial expenses.

It seems as though this is the first time this court or any of the appellate courts in this state is called on to assess damages for the death of an infant three and a half months old. Any court hesitates when it has to measure the value of human life in money. In suits for damages for death of children a few years of age, there are enough cases to look to to furnish some sort of a guide. We are not unmindful of the suffering which a mother has to undergo in order to bring her new born child into the world and of the deep anxiety of the father, and still we can not but feel that parents have not the same form of attachment for a three months old baby that they have for a child three years or more. At such a tender age, the hazard of life has not yet been overcome as much as it has in the older child. The small infant is subject to so much more disease and other perils of life than the one who is past the infant age and may be said to be safely on the road to life. That may be one of the reasons why that attachment and devotion of the parent, which we have referred to, increases as the child grows older. That is the reason also why we believe that compensation for the death of an infant of the age of the one whose loss was sustained in this case, should not be as great as in the case of an older child, and therefore we have concluded to assess the damages in this case at the sum of $3,000.00 allowing one-half of that amount to each of the parents.

The demand made by the husband for expenses incurred on behalf of the child is supported by sufficient proof. The doctor rendered a bill of $25.00 for attending the child from the moment it was brought to the hospital until it died during the night, and the undertaker's bill of $157.68 which included the purchase of a burial plot was duly proven.

Separate decrees will be entered in each case, and in the present, which is that of Elie Meaux seeking to recover for his own personal injuries, other damages and expenses, the decree follows:

For the reasons herein assigned, it is now ordered, adjudged and decreed, that the judgment appealed from be amended by reducing the amount of the award from the sum of $8,314.00 to the sum of $4,500.00, and that as thus amended, it be affirmed.