KENNON, Judge.
This suit is brought by Mrs. Alice Bradford. Her two minor children, William and Susan Bradford, were both killed as the result of a highway accident which occurred on October' 5, 1947, when a Ford sedan in which both minors were passen■gers was virtually demolished in a collision- with a truck owned by defendant Ralph Wertz.
Consolidated for trial in the District Court with the Bradford suit was a suit by the parents of'William A. Brown and As-aph Buck Brown, who 'were killed as a result óf the same accident. The Brown petition set forth that the Ford car was being 'operated by their son, William A. Brown, and that their other son, A. B. Brown, was riding as an invited guest, along with the above mentioned Susan and William Bradford.
The two petitions are identical in the charges of negligence against the named defendants. The petitions charge that the Brown automobile, proceeding east on the Winnfield-Natchitoches road (U. -S. Highway No. 84, La. Highway No. 6), collided with a large motor truck and trailer which lifted the Ford sedan off the highway, crushed it in and fatally injured the four occupants.
Specifically, the petitions charge the truck driver with driving at an excessive and illegal rate of speed in violation of the limit fixed by la-w; in failing to keep a proper lookout; in failing to give a warning signal; in failing to slow down and in operating the truck “at a speed and. in a manner to endanger the life and limb of persons,” and finally in cutting or swerving his truck to the left in such a manner as to indicate he was going to make a left turn and then suddenly and without warning cutting back to the right and colliding with the Brown car.
Defendants, Ralph Wertz, owner of the truck, Clarence Thomas, driver of the truck, and Highway Insurance Underwriters, liability insurer of the vehicle, admitted the occurrence of the collision and the resulting deaths of the occupants of the Ford sedan, but set forth that the driver, at the time of the accident, was proceeding south on U. S. Highway No. 71, on his own right side of the highway and at a speed of less than thirty-five miles an hour; that, looking to his left and observing that the Brown sedan was approaching in such a manner as to show that the driver did not intend to stop for the intersection, the truck driver applied his brakes, skidded his tires, and turned to the right, all in an effort to avoid the collision; that the Brown automobile continued into the intersection at a speed of fifty miles per.hour or more without application of brakes or reduction of speed, striking the truck on its left side; that U. S. Highway '71, upon which the truck was traveling, had the right of way; that stop signs were in place against traffic on the intersecting highway on which the Brown car was traveling, and that defendant’s truck had crossed the north half of the intersection and was in the southwest corner of the intersection when struck.
In the alternative, in the event the Court should hold the truck driver guilty of any negligence,' defendants pleaded William Brown’s negligence in failing to respect the right of way of the truck driver on U. S. 71; in failing to’ slácken his speed or stop his car before entering the intersection, and in failing to keep a proper lookout as acts of contributory negligence which were specially pleaded as a bar to recovery. Defendants further pleaded that the other oc *49 cupants of the car were guilty of contributory negligence in continuing to ride in an automobile being driven at a rapid, illegal and dangerous rate of speed; in failing to complain or protest and warn the driver against driving into and across the highway intersection at such a dangerous rate of speed; in failing to regard, the stop sign; in failing to keep a lookout for approaching traffic and warn the driver of the dangers attending his careless, reckless and imprudent driving.
Defendants, Fairmont Foods Company and its insurer,, in answer denied the acts of negligence charged, setting forth that the Wertz truck was being operated in a careful and prudent manner and that the above described acts of negligence on the part of the driver of the Brown car confronted the truck driver with a situation of emergency for which he did all a prudent man could have done and his actions in no way contributed to the accident.
In the alternative, these defendants likewise pleaded that the above described acts of William Brown constituted contributory negligence on his part and that the other occupants of the car, including William’s brother, were guilty of’acts of contributory negligence as above described.
Defendants, Faix.nont Foods Company and its insurer, admitted the existence of a public liability policy, but pleaded that the description of the word “insured” was such as to exclude the vehicle and driver involved in this accident. The answer further set forth that there was a written contract and agreement between the Fairmont Foods Company and defendant Wertz under which merchandise belonging to the Fairmont Company was being transported from Lawton, Oklahoma, to New Orleans, Louisiana; that Ralph .Wertz obligated himself to indemnify the Fairmont Foods Company against all possible loss as the result of the operation of the truck involved in the accident, and asked that their rights be reserved to proceed against Wertz and his insurer by way of indemnity for any judgment that might be rendered against the Fairmont Company and its insurer in the present suits.
The learned Judge of the District Court, in a written opinion filed in the record, found that Brown, driver of the Ford sedan, drove into the intersection without slowing down or stopping; that the truck driver, when about fifty feet from the intersection, applied his brakes and bore to the right; that the collision occurred in the southwest corner of the intersection when the car struck the truck just behind the cab, and that the negligence of young Brown in driving the Ford into the intersection without slowing down was the cause of thé accident. He' concluded that the driver of the truck was free from negligence and that the accident resulted from the negligence of the driver of the Ford car and from the negligence “to a lesser degree” of the other occupants of the car “who apparently failed to warn him-of his approach to the intersection when it- became apparent that he wasn’t slowing down for it.”
The Distript. Court gave judgment in each of the two consolidated cases rejecting the demands of all plaintiffs against all defendants: Plaintiffs in both suits perfected devolutive appeals, which were consolidated for hearing in this Court.
The accident occurred at approximately noon on a clear day. The Wertz truck included a tractor unit and a twelve foot high trailer with -an over-all length of thirty-five feet. It was rather heavily loaded. Its driver testified that he was traveling at forty-five miles an hour as he neared the scene; that he took his foot off the accelerator when he saw the signs indicating that he was approaching the Clarence crossroads. He estimated that his speed was less than thirty-five miles an hour at the time he began applying his brakes-, and turning his vehicle gradually to its right. -The collision took place in the southwest corner of the intersection, when the on-coming Ford, traveling at a speed of approximately fifty miles an hour, •entered 'the intersection without either slowing down or stopping, and ran into the left side of the truck, striking at the saddle tank just behind the cab. The collision was a violent one, causing the truck-trailer *50 combination to jackknife and crush the sedan and cause fatal injuries to the four occupants.
We agree with the finding of the District Court that the driver of the Ford was guilty of negligence in approaching the intersection at an excessive speed and failing to slow and stop his vehicle prior to entering the intersection; in failing to observe the approaching Wertz truck, and in proceeding into the favored Highway 71 at a time when the Wertz truck had already entered the intersection. These acts clearly constitute a contributory negligence and are an effective bar to the recovery of any damages on account of the death of William A. Brown.
The evidence shows that the driver of the Wertz truck first saw the approaching Brown automobile when he was seventy-five to one hundred feet from the intersection. The fact that he promptly applied his brakes is shown by the existence of skid marks which began at a point fifty or fifty-one feet north of the intersection. One of plaintiffs’ witnesses testified in support of the assertion in the petition that the Wertz truck made a misleading or false turn to the left as it approached the intersection and just prior to the collision. However, the clear preponderance of the testimony, including that of the sheriff and ■ highway trooper investigating the accident, is convincing that the truck driver at all times kept his truck to the right of the center line as he applied his brakes. All the skid marks were on the right side of the pavement. Consequently, the only act of negligence left to consider against the defendant truck driver is the charge that he was driving into a populated center and intersection of two U. S. highways at a speed nearly three times the fifteen mile limit then in effect under the general Highway Regulatory Act, Section 3, Rule 4(c) (2), Act No. 286-of 1938, as follows: “It shall be unlawful to operate upon said public highways motor vehicles transporting property in commerce, of either a registered or actual Gross Weight, with or without load, of over three thousand (3000) pounds at a rate of speed in excess of forty (40) miles per hour, or within the corporate limits of any incorporated city or any town or village not incorporated, at a rate, of speed in excess of fifteen (15) miles per hour.”
As opposed to the driver’s estimate that his speed was only thirty-five miles an hour when he observed the Brown Ford, a defense witness, introduced on behalf of Wertz and his insurer, testified that the truck was traveling forty-five or fifty miles an hour as it approached the intersection. Another witness introduced by the same defendants fixed the speed of the truck at thirty-five or forty miles an hour, while a third defense witness, introduced by Fair-mont Foods Company and its insurer, estimated the truck’s speed at forty or forty-five miles an hour. These estimates are corroborated by the fact that, after the impact, even though the brakes had been effectively applied for more than fifty feet north of the intersection, and notwithstanding the slowing effect of the crash when the heavy trailer jackknifed to its left and crushed the Brown automobile, the truck and trailer still had momentum enough to carry it some sixty or seventy feet southward beyond the collision ■ point, where the tractor or engine portion finally came to a stop, headed in a complete about-face from its original direction. We find that the truck was traveling nob less than forty miles an hour as it approached the intersection and at the time its driver first observed the Brown automobile rushing toward the intersection from the left.
According to the Barret table of stopping conditions (14 Tulane Law Review, page 493), a vehicle operated at a speed of twenty miles per hour should be able to stop under average conditions (including reaction time) in a total stopping distance- of 44.2'. It is clearly established that the brakes on the Wertz truck actually took effect at a point 5T feet north of the collision site. Evidently the driver saw the Brown vehicle approaching on the left at a time when he was almost 100' from the intersection, because at a speed of forty miles per hour he would have traveled approximately 45' during the “reaction time,” which has been determined to be three quarters of one second for the aver *51 age driver. Noting that the over-all “stopping distance” at a speed of twenty miles an hour is forty-four and a fraction feet, it is logical to conclude that the truck would have been stopped before entering the intersection had the driver been obeying the fifteen mile per hour speed limit applicable. For a speed of forty miles an hour, the “stopping distance” is 132'. This longer stopping distance made the difference in whether the truck driver could save the guest occupants of the Ford sedan from the threatened injury due to the negligence of their own driver. We therefore find that the speed of the truck as it approached the intersection was a contributing cause of the fatal collision.
The following statement made in the case of Stuart v. Gleason & McKenney, La.App., 42 So.2d 545, 547, is applicable to the driver of the Wertz truck: “The driver of the gasoline truck was negligent in approaching an intersection and an unincorporated village at a rate well over the speed limit designated by § 3, Rule 4(c) of Title II of Act 286 of 1938 for the operation of such vehicles through any town or unincorporated village of ' the State, ⅜ ⅝ ⅜ »
With reference to the right of the guests in the Brown car to recover, the statements made and authorities cited in the Stuart case are likewise appropriate.
Having found the truck driver guilty of negligence, we next consider whether the defendants have established the facts upon which they base their plea of contributory negligence against the three guest passengers in William Brown’s automobile.
We will first take up-the charge that the three guest passengers continued to ride “in an automobile being driven at a rapid, illegal, dangerous and reckless rate of speed, without complaint.” Not a single witness was offered who testified that the automobile on the day in question was driven, prior to the time the car reached the stop sign at the Clarence intersection, at an illegal, dangerous or reckless rate of speed. The wreck happened at a considerable distance from the homes of the guest passengers. There is no testimony in the record that either of the three guest-passengers was familiar with the route, they were traveling or aware just prior to the accident that they were about to enter the dangerous intersection at Clarence. Courts of Louisiana have uniformly held that a passenger in an automobile, who has no reason to consider the driver incompetent, is not required to maintain a lookout, but may rely upon the driver to look out for their common safety. The driver was a young man in his early twenties, an ex-soldier, and, as far as the- record • shows, completely in control of his senses ■ and completely capable of safely operating his automobile. It was mid-day and the weather was clear. Consequently, there was no special reason — or legal requirement — that the guests should not devote their attention and thoughts to themselves or to each other and leave the operation, of the vehicle in the hands of its owner and driver. Under these conditions, it was not negligence for them to be ignorant of the fact that the car was approaching the intersection, and of course if they were under no duty to know of the existence of the intersection just ahead, it follows that their apparent failure to warn the driver was not proof of an act of contributory negligence.
It is incumbent upon the defendants to establish, by a reasonable preponderance of the evidence, acts of the guest passengers which they rely upon as constituting contributory negligence. We find no such proof in the record.
Counsel cites the case of Foy et al. v. Little et al., La.App., 197 So. 313, 317, in which Foy, who was operating his pickup truck on a right of way street in the town of Winnsboro, at a speed of forty miles an hour, was permitted to recover against Dr. Little, who proceeded across this main street without stopping, as required by municipal ordinance. It is noted on reading the case as a whole that the Court of Appeal in its original opinion found that deceased — on the right of way street — was guilty of negligence in approaching the intersection at such a speed (forty miles per hour) and in failing to have the vehicle under sufficient control, and the demands were rejected. On rehearing, the Court of *52 Appeal, after again noting the fact brought out by the original opinion that there was no effective ordinance fixing the speed limit for motor vehicles within the town of Winnsboro, decided the case on the question of whether or not the rate of speed of the truck was illegal as determined by the general highway act, which required only that the speed be reasonable “having due regard to the traffic, surface and width of the highway, location and neighborhood, * * The Court then found that Foy was driving, at the time, on the right side of an eighteen foot, dry concrete street that was free of curves for a considerable distance; that clear weather prevailed, and that no other traffic (until the appearance of the Little car) occupied either street in the vicinity of the intersection. The Court then concluded that “A 40-mile an hour speed, under the circumstances and conditions above recounted, and particularly in view of the right of way status of Main street, was not, we think, excessive and in violation of the above mentioned statutory provision.”
In the case before us, the truck was being operated in violation of a statutory provision. Although Highway 71 was favored over the intersecting Highway 84, both-.were U: S. numbered roads and principal highways. In addition to. being the crossing of'.two main highways, the .intersection was the center of an active, populous, unincorporated village. Under these, circumstances, the holding in the Foy case is not controlling here.
In the case of Krieger v. Mirandona, La.App., 150 So. 78, the decision was: based upon the finding of the Court that both vehicles approached the intersection at approximately the same time and that the defendant, who had right of way, was free, from fault in the resulting collision. A reading of the opinion shows that neither the district pourt nor the appellate court accepted plaintiff’s contention that defendant was traveling at an excessive speed. We therefore find that this case is not decisive of the point now before us.
Another case cited by the defendants is Grasser v. Cunningham et al., La.App., 200 So. 658, 660, where the defendant made a left turn into ' the path of plaintiff’s oncoming car. There the Court held that the fact that plaintiff was driving his car at the time Over the legal speed limit of twenty-five miles an hour was not, under the facts ■ shown, a contributing cause of the accident, the Court stating that the plaintiff “could as well have been struck in the manner it (the car) was while going 25 miles per hour just the same as it was going 40 to 50 miles per hour.”
In the case of Smith v. Howard Crumley & Company, Inc., et al., La.App., 171 So. 188, cited by defendants, the Court found that a motorist who drove heedlessly and rapidly into a right of way highway, without regard to the stop sign, was negligent. The existence vel non of contributory negligence on the part of the driver of the car on the right of way street was not at issue. That the Court did not pass upon this point is indicated by the sentence in the opinion to the effect that if the accident occurred from the concurrent negligence of both operators, they and their principals would be responsible to plaintiffs, who were guests in one of the vehicles.
Defendants cite the recent decision of this Court in the case of Vines v. Hartford Accident & Indemnity Company, La.App., 36 So.2d 729, 731, "in which a plaintiff at this same intersection, who drove into the path of an on-coming vehicle, admittedly speeding, was denied recovery. We accept this case as-authority for denying recovery" for the injuries done to the driver of the Brown vehicle because his action in driving into the "favored highway at a time when it was dangerous to do so constituted contributory negligence the same qs was true of plaintiff in the Vines case. In the Vines case, the opinion of this Court concluded with the- statement that “the neglL gence of both drivers was of equal gravity; each being a proximate cause of the coilision, *, * *.”
■In the case before us we likewise find that the negligence of both drivers constituted a proximate cause of the collision.
The record clearly establishes that the ■ truck driver was, at the time of the accident, engaged in the duties of his employ *53 ment with the defendant, Ralph Wertz. Defendant, Highway Insurance Underwriters, admitted coverage of the truck involved.
We next consider whether defendants, Fairmont Foods Company and its insurer, are responsible for the negligent acts of Clarence Thomas, driver of the Wertz truck. The following sentence from paragraph ten of the answer of these two defendants sets forth their position on this point: “In answer to Paragraph 10 of plaintiff’s petition, these defendants admit the truck was owned by defendant, Ralph Wertz, who was at the time of said accident doing business as Wertz Fruit Company, and that the said truck was being used and operated by Wertz through his employed driver,- Clarence Thomas, one of the defendants in this suit, under arrangement between the defendant, Fairmont Foods Company and the owner of the truck, Ralph Wertz; these defendants further admit that the truck was being used and driven with the permission, knowledge and consent of its owner, Ralph Wertz, and was transporting butter and other dairy products belonging to and for the Fair-mont Foods Company.”
In a subsequent paragraph of their answer, these defendants set forth that in the written contract and agreement under which the truck was being operated and under which merchandise of the defendant, Fairmont Foods Company, was being transported along U. S. Highway 71 from Lawton, Oklahoma to New Orleans, Louisiana, Ralph Wertz obligated himself to indemnify Fairmont Foods Company and its insurer against all possible loss as the result of the operation of the truck by Clarence Thomas, etc.
The written 'contract referred to in the answer was not introduced - in record, and taking into consideration the pleadings and testimony, we find that the driver. Clarence Thomas, was operating the Ralph Wertz truck for the benefit of and in furtherance of the business of the Fairmont Foods Company at the time of the accident and that this company is liable, in solido, with the driver, Wertz, and his insurer.
Defendant, American Surety Company, admitted the issuance of a public liability policy in favor of the Fairmont Foods Company. This truck was not listed in the policy. This defendant denied liability for the damage done by the Wertz truck, relying upon the f ollowing definition in the policy of the term “insured” and exclusion clause:
“The unqualified word ‘insured’ includes the named insured and also includes any executive officer while using an owned automobile or a hired automobile or while legally responsible for the use thereof, provided the actual use is with the permission-of the named insured, and also any executive officer of the named insured while using a non-owned automobile in the business of. the named insured.”
“The insurance with respect to any person or organization other than- the named insured does not apply:
“(e) with respect to any hired automobile, to the owner thereof or any employee of such owner.”
The evidence shows that Clarence Thomas, driver of the truck, was an employee of. -Ralph Wertz and that Ralph Wertz was the sole owner of the truck. There is no testimony that the driver of the truck was an executive officer of Fairmont Foods Company or otherwise connected with the company except as resulted from his employment with Ralph Wertz, who in turn was using the Thomas-operated truck as a.means of carrying out his contract with Fairmont Foods to transport its merchandise from Oklahoma to New Orleans, Under these circumstances, plaintiffs have failed to make out a case of liability against defendant, American Surety Company.
Plaintiff; Mrs. Alice ’ Bradford, is the sole surviving parent of William Bradford, who-was eighteen years of age at the time oí his tragic death, and of Susan Bradford, who was then nineteen years of age. This son worked in the oil fields. The daughter worked in Shreveport. The mother testified that the son contributed unspecified amounts..for her support from time to time, and that her daughter contributed “whatever she could spare dur *54 ing her working years,” mentioning $5.00, $8.00 and $10.00 as weekly sums that had been contributed to her by her daughter. She testified that she had been a widow for many years; that she had left three married children and three unmarried children; that the family circle was closer “than most families,” stating with reference to her children that, “I raised them the best I could and we did seem to have awful close relations with them and enjoyed them mighty well, yes, sir.”
She testified that the hospital and funeral expenses for the two amounted to $534.00.
We have fixed $6,000.00 as a proper total award to Mrs. Bradford for the loss of each of her two children. This award to be in addition to the medical and funeral expenses incurred.
Since we have found that the negligence of William A. Brown was a contributing cause of the accident, plaintiffs, Mr. and Mrs. Terry Brown, are entitled to recover only for the death of their son, Asaph B. Brown, who was twenty-three years old at the time of his death. Young Brown had been in the Army for three years. After his return, he, being single, had spent a good deal of time with his father and mother on the farm. He died right after the accident. His father testified that his funeral expenses amounted to $450.00. At the time of his death, he had plans to be married soon, his father testifying that he “had his wedding clothes already bought.” Under the circumstances, the only financial loss to the Brown family on account of the death of Asaph B. Brown was the funeral expense of $450.-00.
We have concluded that an award of $3,000.00 for the loss of love and affection to each parent would be proper.
For the reasons assigned, the judgment appealed from is set aside and judgment is now rendered in favor of the plaintiff, Mrs. Alice Bradford, and against the defendants, Clarence Thomas, Ralph Wertz, d/b/a Wertz Fruit Company, Highway Insurance Underwriters, and Fairmont Foods Company, in solido, in the sum of $12,534.-00, with five per cent, interest from judicial demand until paid.
All rights which the defendant, Fair-mont Foods Company, may have against the other defendants herein cast for reimbursement as the result of this judgment, are hereby reserved to the company.
Costs of both courts to be paid by the defendants cast.