Alexander SILVERMAN and Mrs. Ethel Silverman, Appellants,

v.

TRAVELERS INSURANCE COMPANY and David A. Larson, Appellees.

No. 18055.

United States Court of Appeals Fifth Circuit.

April 4, 1960.

258

H. Alva Brumfield, Baton Rouge, La., Isaac Abramson, Shreveport, La., Gene S. Palmisano, New Orleans, La., for appellants.

C. W. Phillips, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., for appellees.

Before RIVES, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This appeal turns on the scope of appellate review of a district court's discretion in denying a motion for a new trial based on the movant's contention that a verdict of $5,900 in favor of a father and mother is inadequate for the wrongful death of their promising young son. The underlying question is: what are the elements of damages for the wrongful death of a boy of seventeen?

David Silverman was an exceptional boy. He went through all the ranks of air scouting, was a troop leader, and was awarded many merit badges. At fourteen he went to the Scout Jamboree in California and was elected Press Reporter for the Jamboree. At sixteen he had completed Ground Observer Training and was a Squadron Commander in the Shreveport Civil Air Patrol. He held a Federal Communications Commission as a radio-telephone operator. He was graduated with high honors from Fair Park High School in Shreveport, Louisiana. Consolidated-Vultee Aircraft thought enough of young Silverman to give him a four-year scholarship to college; then looked a little further in his record and awarded him a scholarship for an additional two years, conditioned on his doing graduate work in aeronautical engineering at the California Institute of Technology. After completion of the whole six years, Consolidated-Vultee was to employ him as an aeronautical engineer at $960 a month.

In September 1956 David Silverman, seventeen years of age, entered Louisiana State University. Two weeks later he was run over and killed by another student, a young man named Larson.

It is unnecessary to sift the evidence relating to the accident: the issues of negligence and contributory negligence are not before this Court. The accident took place shortly before 11:00 o'clock at night. David Silverman was walking along Nicholson Drive, a four-lane street leading to the campus of Louisiana State University. He was struck from the rear by Larson's automobile. According to the plaintiffs, Larson was passing another car and failed to see Silverman. According to the defendant, young Silverman stepped from the neutral ground directly into the path of Larson's automobile. David Silverman died almost instantly.

David's father, Alexander Silverman, filed suit against Larson for $122,500; his mother sued for $120,000. The case was tried to a jury. After deliberating four hours, the jury awarded David's father $2500 and burial expenses of $943. The jury awarded David's mother $2500. The parents filed a motion to amend the judgment by additur or, in the alternative, for a new trial. This appeal is from the denial of these motions.

Circuit courts review a lower court's ruling on a motion for a new trial, based on inadequacy or excessiveness of the verdict, to determine if the trial judge abused his discretion. 6 Moore, Federal Practice, Section 59.08(6), pp. 3836, 3839–41, nn. 68–72, (2d ed. 1953). Abuse of discretion is an error of law. This Court may review questions of law presented by the ruling of a district court on the motion for a new trial. Southern Farm Bureau Casualty Insurance Company v. Palmer, 5 Cir., 1959, 263 F.2d 206.

In Marsh v. Illinois Central R. Co., 5 Cir., 1949, 175 F.2d 498, 500, Judge Sibley, for this Court, stated: "A motion for a new trial is addressed to the trial judge's discretion. He may grant a new trial if he thinks he has committed er-

ror; and he may grant one (and he alone can) because he thinks the verdict is wrong, though supported by some evidence. The exercise of his discretion is not ordinarily reviewable on appeal, though a failure to exercise discretion, or an abuse of it, may be corrected." In Miller v. Tennessee Gas Transmission Co., 5 Cir., 1955, 220 F.2d 434, Judge Rives, quoting from Judge Borah in Commercial Credit Corp. v. Pepper, 5 Cir., 1951, 187 F.2d 71, 75, noted that the term "discretion", when invoked as a guide to judicial action "means a sound discretion, exercised with regard to what is right and in the interests of justice". In Whiteman v. Pitrie, 5 Cir., 1955, 220 F.2d 914, 919, Judge Rives, for the Court, reviewed the tests that have been applied in determining if there has been an abuse of discretion, and concluded: "When all is said and done, however, the question by its very nature is one for which there can be no rule of thumb answer. Attempts at defining or making more certain and exact the tests of abuse of discretion do not usually furnish reliable guide posts, nor tend to clarify the rule." See also Complete Auto Transit, Inc. v. Floyd, 5 Cir., 1957, 249 F.2d 396, certiorari denied, 356 U.S. 949, 78 S.Ct. 913, 2 L.Ed.2d 843.

▆▆▆ To show an abuse of discretion by the trial judge, appellants cite Louisiana cases in which the appellate court affirmed a larger verdict than the jury awarded in the instant case. But federal juries are not bound by the amounts Louisiana juries and Louisiana courts have awarded for wrongful death.[1] Each federal jury determines the facts in the case before it and, under the Seventh Amendment, the jury's verdict cannot be re-examined; although the district court, in its discretion, may set aside the verdict and grant a new trial. Southern Farm Bureau Casualty Insurance Company v. Palmer, supra. However, the right of recovery for wrongful death and the elements of damages to be considered by the jury in its verdict and by the district court in the exercise of its discretion to grant a new trial are determined by Louisiana law.

In the common law there was no right of action for wrongful death. All the states however now allow a statutory right of action for wrongful death. Most of them follow Lord Campbell's Act, 9 & 10 Vict. c. 93 (1846), in that the statutes are not to remedy the wrong done to the decedent but rather for the exclusive benefit of designated beneficiaries. Harper & James, Torts, Section 24.1, Section 25.14 (1956); Prosser, Torts, Section 105 et seq. (2d ed. 1955). In early Louisiana law, as in the common law, there was no right of action for wrongful death,[2] but by amendments to Article 2315 of the Civil Code the Louisiana legislature established first a survival action and later a wrongful death action.[3]

1. Judge Sibley pointed out in Legler v. Kennington-Saenger Theatres, 5 Cir., 1949, 172 F.2d 982, 985 (dissent): "The Mississippi decisions cited are no authority at all for a court of the United States reexamining the facts found by a jury. Particularly as to the amount of damages a federal appellate court will not interfere. Houston Coca-Cola Bottling Co. v. Kelley, 5 Cir., 131 F.2d 627." See also 6 Moore, Federal Practice Section 59.04 (3), p. 3712 (2d ed. 1953).

2. In the early leading case on the subject, Hubgh v. New Orleans & Carrolton Railroad Co., La.S.Ct., 1846, 6 La.Ann. 495, the court declined to follow the French view that allowed recovery under an article of the Code Napoleon that was identical with Article 2315 (then Article 2294) of the Louisiana Civil Code. The court relied on the principle established in Roman law and Spanish law that "actions for personal injuries are strictly personal".

3. Article 2294 of the Civil Code of 1825, tracking Article 1382 of the Code Napoleon, read: "Every act whatever of man, that causes damage to another obliges him by whose fault it happened to repair it". Act 223 of 1855 amended Article 2294 by adding the language: " * * * the right of this action shall survive in case of death in favor of the minor children or widow of the deceased, or either of them, and in default of these, in favor of the surviving father and moth-

Article 2315 of the Louisiana Civil Code does not limit the amount of damages recoverable nor restrict the elements of damages to be considered. "The damages recoverable are neither defined nor restricted, and it is left to the courts to determine both the nature and quantum of damages recoverable under the statute." Bourdier v. Louisiana Western R. Co., 1913, 133 La. 50, 52, 62 So. 348. Louisiana courts recognize as proper elements of damages not only loss of support, loss of contributions, from the decedent, but also loss of society and the grief and anguish of the beneficiaries.[4] In Kaough v. Hadley, La.App.1936, 165 So. 748, 752, the court stated that in determining the quantum of damages for the death of a minor child "age, contributions, affiliation, domestic association, and prospective helpfulness all enter into the sum total". In addition, "the suffering of a minor child is heritable and properly recoverable in an action of this character". But "no yardstick for the estimation of damages to the parent or parents for the death of a minor child is available, and * * * every case * * * must stand upon [its] peculiar facts or circumstances".

In this case Silverman's death was instantaneous. There is no element therefore of conscious pain and suffering heritable by his parents. In Kimbell v. Homer Compress & Mfg. Co., 1903, 109 La. 963, 967, 34 So. 39, a boy nineteen years old, a day laborer installing a heavy boiler, was killed instantly when the boiler rolled from its cribbing, crushing his skull against the wall of the boiler-house. The Court held that the parents had no heritable claim for pain and suffering, because of their child's instant death. See also Clements v. Louisiana Elec. Light Co., 1892, 44 La.Ann. 692, 11 So. 51, 16 L.R.A. 43.

There is no showing that Silverman gave any financial help to his parents. Contribution to the support of the parents is therefore not an element of damages here. In Bradford v. Wertz, La. App.1951, 52 So.2d 47 the court allowed $3,000 to each parent for the loss of love and affection of a son who was killed in an automobile accident but, on the show-

---

er, or either of them, for the space of one year from the death." Article 2294 of the Code of 1825 was carried into the Code of 1870 as Article 2315. Act 71 of 1884 amended Article 2315 by creating a remedy for wrongful death, adding the language: "The survivors above mentioned may also recover the damages sustained by them by the death of the parent or child, or husband or wife, as the case may be." The 1884 amendment substituted "or" for "and" in designating the beneficiaries so that the article reads "minor children or widow" instead of "minor children and widow". See Voss, The Recovery of Damages for Wrongful Death at Common Law, at Civil Law, and in Louisiana, 6 Tul.L.Rev. 201 (1932); Oppenheim, The Survival of Tort Actions and the Action for Wrongful Death—A Survey and a Proposal, 16 Tul.L.Rev. 386 (1942); Comment, Elements of Damages for Wrongful Death in Louisiana, 20 La.L.Rev. 357 (1960).

4. Louisiana is in the minority in allowing damages for the grief or mental suffering of the survivors. "Where the damages recoverable are based upon the loss to the surviving beneficiaries, it is the general rule that only pecuniary loss is to be considered. The death acts obviously are aimed at protection of the relational interest, and bear a close analogy to the action of the husband or parent for loss of services through injury to the wife or child. * * * Thus, with only a few exceptions, the courts refuse to allow damages for the grief or mental suffering of the survivors; and many of them still refuse any compensation for the loss of society, comfort, intercourse, protection, and other incidents of family association. Undoubtedly a lively fear of the over-enthusiasm of sympathetic juries has had a good deal to do with this result. * * * In general, however, the measure of recovery is the value of the support, services and contributions which the beneficiary might have expected to receive if death had not intervened. * * * Under about one-third of the death acts the discretion of the jury is at least partly controlled by a maximum limit of recovery on behalf of all beneficiaries for a single death, which usually is set at $10,000, but is lower in a few jurisdictions." Prosser, Torts Section 105 (2d ed. 1955).

ing that the son was about to be married, and therefore not likely to contribute to his parents, the court allowed only funeral expenses of $450 for the financial loss to the parents. See also Blackburn v. Louisiana Ry. & Nav. Co., 1911, 128 La. 319, 54 So. 865; Brown v. Wertz, 1951, La.Ct.App., 52 So.2d 54; Thibodaux v. Culotta, La.App.1939, 192 So. 712; Edwards v. Texas & P. R. Co., 1938, La. App., 185 So. 111; Williams v. Brown, La.App., 1937, 181 So. 679.

■ Counsel for the Silvermans now contends that as a matter of law the award was inadequate in failing to consider the future help and the future support from David even though David was not contributing to the family budget at the time of his death. These are speculative elements which may not be taken into account by the jury. They are the "speculative damages" the court referred to in its charge and instructed the jury to disregard. Counsel for the plaintiff made no objection to the trial judge's omission in the charge of any direct reference to future support and, in counsel's requested instructions, he did not list future support as an element for the jury to consider. Since there is nothing in the record to show any past contributions by David and nothing to show any likelihood that David would find it necessary in the future to contribute to the support of his parents, there was no basis for the jury to consider the element of future support.

Except for recovery of funeral expenses, the only damages recoverable in this case are for the grief and anguish of the parents, their mental suffering, and the loss of companionship, love and affection of their son. The able district judge charged the jury as follows:

"On this issue of damages, I charge you that the damages are allowed not as punishment but as compensation for the injury sustained, and should be commensurate therewith. Actual damages alone are compensable. There can be no recovery for speculative damages, and damages must be proved to a reasonable certainty. There is no yardstick by which you can measure the amount of recovery which should be had in any given case. That matter is left for your own judgment and determination, and you will arrive at a conclusion therein in the light of the evidence as you have heard it.

"The items of damages which you may consider in this case as to Mr. Silverman, are first, funeral expenses, which have been outlined to you in the evidence; second, the mental suffering or as sometimes stated, the loss of companionship, love and affection of that decedent son. Those are the items of damages which you may consider in connection with Mr. Silverman's claim."

■ The second and third sentences of the quoted instructions standing alone might be subject to criticism, but considering the entire charge as to damages, we find that the charge was a proper instruction to the jury on the elements of damages under Louisiana law. Counsel for the plaintiffs did not object to this portion of the charge. He could not: it is a paraphrase of his requested instructions.[5]

5. "Instruction No. 16 Requested by Complainants.
"You are instructed that the elements of damages for which an award in money can be made to the plaintiff, Alexander Silverman, are as follows: (a) Allocable portion of the physical and mental pain and suffering sustained by David A. Silverman from the time of the accident until the time of his death. (b) Loss of love, affection and companionship of his son. (c) Grief, sorrow, pain, anguish and mental distress, suffered by Alexander Silverman as the result of the death of his son. (d) Funeral expenses.
"You are instructed that the elements of damages for which an award in money can be made to the plaintiff, Mrs. Ethel Silverman, are as follows: (a) Allocable portion of the physical and mental pain and suffering sustained by David A. Silverman from the time of the accident until the time of his death. (d) Loss of love, affection .and companionship of his (sic) son. (c) Grief, sorrow, pain, anguish and mental distress, suffered by Mrs. Ethel Silverman as the result of the death of her son."

■ We cannot say that the jury's assessment of damages was inadequate as a matter of law. In suits for the wrongful death of a child Louisiana courts have upheld awards to each parent of $3,000 (Bradford v. Wertz, La.App.1951, 52 So. 2d 47), of $3,750 (Todd v. New Amsterdam Casualty Co., La.App.1951, 52 So.2d 880), of $2,500 (Ford v. Brewer, La.App. 1939, 186 So. 905), and of $1,500 (Meaux v. Gulf Insurance Co., La.App.1938, 182 So. 158). In Hebert v. Texas & Pac. Ry. Co., La.App., 1946, 28 So.2d 151, 153, the sum of $6,750 was awarded to each parent where the deceased child, a seventeen-year old boy, "was of great help to the parents financially * * * assisted his father in the operation of a farm, and in addition secured outside employment contributing his earnings to his parents". Thus, Louisiana courts, which are not restricted as are federal courts by common law proscriptions against appellate revision of jury verdicts, as a matter of law often have sustained awards comparable to the award in this case.

There are a number of cases in which this Court has reversed and ordered a new trial because the damages were excessive as a matter of law. There are very few cases in which this Court has reversed the trial judge's refusal to grant a new trial because of inadequate damages. In Legler v. Kennington-Saenger Theatres, 5 Cir., 1949, 172 F.2d 982, a jury verdict awarded $254 to the plaintiff for injuries she suffered when she fell over a heavy stone urn standing in the defendant's theatre lobby. A majority of the Court recognized the general rule that ordinarily federal appellate courts will not inquire into the amount of the verdict to determine whether the award was excessive or inadequate, but held that the general rule was inapplicable because the inadequacy of the verdict was the result of prejudicial error in submitting the issue of contributory negligence to the jury. Judge Sibley, dissenting, stressed that over-ruling the jury award of damages was an usurpation of power contrary to the Seventh Amendment. In Commercial Credit Corp. v. Pepper, 5 Cir., 1951, 187 F.2d 71, Judge Borah, for the Court, held that the trial judge abused his discretion in refusing to grant the plaintiff a new trial. In that case, however, there was an obvious error in submitting certain cancelled checks to the jury. Indamer Corp. v. Crandon, 5 Cir., 1954, 217 F.2d 391, was an action in which the jury verdict awarded the plaintiff only twenty to twenty-five percent of the value of an airplane destroyed in a fire. The lower court was reversed and a new trial limited to the issue of damages alone was ordered by this Court, on the grounds that (a) the amount of damages found by the jury bore no relation to the proof submitted and (b) the jury had been permitted to hear the improper contention that the plaintiff had already been paid $50,000 by an insurance carrier. In Miller v. Tennessee Gas Transmission Co., 5 Cir., 1955, 220 F.2d 434, the trial judge granted a judgment for the plaintiff notwithstanding the verdict, against the plaintiff's objection but with the defendant's consent, and denied the plaintiff's motion for a new trial. The judgment notwithstanding the verdict was reversed. This Court held that the district court denied the plaintiff's motion for a new trial without exercising its full discretion. The case was remanded to allow the trial judge to exercise his discretion as to granting a new trial.

In each of these cases the inadequate amount of damages reflected some error in the proceedings. This is not to say that there may not be cases in which a trial court may abuse its discretion in failing to grant a new trial when the sole reason for the new trial is that the damages are inadequate. It is to say that in an action for wrongful death, when there is no prejudicial error, an appellate court should discipline itself not to substitute its judgment for a jury's judgment, or its discretion for the reasonable exercise of a trial judge's discretion. A jury may be as competent as a district judge, and may be more competent than a district judge, and a district judge may be as

**264**

competent, and may be more competent, than an appellate court, in the assessment of such intangibles as love and affection, grief and anguish.

It is clear from the record that David Silverman was a leader in his age-group, a fine young citizen, a boy with brilliant intellectual attainments who could look to the future with confidence in his ability to succeed in a new and useful profession. His death was a tragic blow to devoted parents justly proud of him. Society lost a potentially valuable aeronautical engineer headed for outstanding leadership. But society cannot sue for this loss. And the parents, who can sue, cannot be compensated in dollars that measure the depth of their despair. Their measurable pecuniary loss is nil, except for the funeral expenses. It is a hard cold fact in today's economy that in many families a child is an economic liability until he is educated and making a living. That is the case here. In short, in the circumstances of this case, we cannot say that the trial judge abused his discretion in accepting the jury's evaluation of the loss of David to his parents.

■ There was no error in denying the motion for additur. Federal practice does not permit the use of additur in cases where the amount of damages is disputed. Dimick v. Schiedt, 1935, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603.

■ The appellants object also to a so-called "dynamite charge" and a so-called "telescopic charge" given by the trial judge when, after two hours deliberation, the jury asked for additional instructions. The trial judge gave a supplementary charge, concluding:

"* * * You must realize that you have heard all the facts in this particular case. It is a case that must be decided. There is no reason to believe that twelve other jurors will be more successful in reaching a verdict in this matter than you will be. You must give intelligent and cooperative attention to this consideration in order that there may be a resolution of this legal lawsuit which exists between the plaintiffs and the defendants."

Although it is better practice to avoid supplementary charges, the propriety of such charges rests largely in the discretion of the trial judge. Allen v. United States, 1896, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528; Hoagland v. Chestnut Farms Dairy, 1934, 63 App.D.C. 357, 72 F.2d 729; Capital Transit Co. v. Howard, 1952, 90 U.S.App.D.C. 359, 196 F.2d 593. We find that the charge did not blast the jury into action in any way prejudicial to the plaintiffs and that the trial judge did not blur the issues by the alleged telescoping of charges.

The Court has considered all of the points raised by appellants. We find no reversible error.

Judgment is affirmed.