No. 2649

Second Circuit

---

MOORE v. VANCE

---

(June 2, 1926, Opinion and Decree)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Automobiles — Par. 4 (c).**

A person in the act of backing an automobile across a sidewalk in a city who sees a boy nine years and two months of age walking on the sidewalk near the point over which he is about to back the automobile, should take such precautions as that in no event conceivable to an intelligent man will it back over and injure the boy.

Albert vs. Munch, 141 La. 686, 75 South. 513.

Mahan vs. Everett, 50 La. Ann. 1162, 23 South. 883.

2. **Louisiana Digest—Negligence—Par. 29.**

The conduct of a child under ten years of age is not governed by the same rules which apply to adults; the care and caution required of a child of tender years being according to his maturity and capacity and the circumstances of the particular occasion, and he is not to be held to the same degree of care, prudence and caution that an adult is under like circumstances. He may be guilty of contributory negligence, but whether he is or not depends upon the particular circumstances of each case and must be determined in connection with his age and ability to judge of the conditions.

Westerfield vs. Levis, 43 La. Ann. 63, 9 South. 52.

Mitchell vs. Illinois Cent. R. R. Co., 110 La. 630, 34 South. 714.

3. **Louisiana Digest—Municipalities—Par. 263; Negligence—Par. 21, 22.**

The general rule is that every person has the right to presume that every other person will perform his duty, in the absence of reasonable ground to think otherwise, and it is not negligence for one to assume that he will not be exposed to a danger which could come to him only from a violation of a duty that another owes to him. Failure of a plaintiff to anticipate the defendant's negligence does not constitute contributory negligence.

Rock vs. American Construction Co., 120 La. 831, 45 South. 741.

**4.   Louisiana    Digest—Municipalities—Par.
263; Roads, Bridges and Ferries—Par.
20.**

Pedestrians are entitled to the right of
way on the sidewalks or banquettes of
a city. Any one backing an automo-
bile over such sidewalk must do it in
such a way that everybody may tra-
verse the same in the confidence of
safety, and must take such precautions
in the driving as that in no event or
situation conceivable to an intelligent
man would he run over and injure a
child using the sidewalk. Anything
short of this constitutes negligence on
the part of the driver of the car.

Mahon vs. Everett, 50 La. Ann. 1162,
23 South. 883.

Mahnke vs. N. O. etc., R. R. Co., 104
La. 411, 29 South. 52.

(Civil Code, Art. 2315. Editor's note.)

Appeal from the Ninth Judicial Dis-
trict Court of Louisiana, Parish of Rap-
ides, Hon. R. C. Culpepper, Judge.

Action by Bernard W. Moore, individ-
ually and for the use and benefit of James
Robert Moore against Norwood K. Vance.
There was judgment for plaintiff and
defendant appealed.

Judgment affirmed.

White, Hollman and White, of Alexan-
dria, attorneys for plaintiff, appellee.

Overton and Hunter, of Alexandria, at-
torneys for defendant, appellant.

## STATEMENT OF THE CASE

REYNOLDS, J.    This is an action,
sounding in damages, brought by Bernard
W. Moore, individually and for the use and
benefit of his minor child, James Robert
Moore, against Norwood K. Vance.

The petition alleges that on January 26,
1925, at the hour of between eight and
nine o'clock, a. m., James Robert Moore,
then nine years and two months of age,
was walking along the sidewalk of Jackson
street in Alexandria, Louisiana, in the di-
rection of Bolton avenue; that, as he
neared the driveway leading out of the
private premises of Mrs. J. C. Blackman,
he observed defendant backing a car along
the driveway; and that he stopped and the
car stopped when both were within a few
feet of the intersection of the driveway
with the sidewalk; that the boy then con-
tinued on his way, and that the defendant,
without warning, notice or signal backed
his car upon the sidewalk, striking the
child and knocking him across the side-
walk, causing a fracture of the pelvic bone.

The plaintiff claims damages for the boy
by reason of physical and mental suffering
and contends for twenty-five hundred dol-
lars on this item, and declares he, himself,
has suffered the following damages: Doc-
tor's bills, $200.00; hospital bill, $37.50;
nurses' bills, $110.00; medicines and inci-
dental expenses, $52.50; and loss of time
from occupation, $100.00; totalling $500.00.

Defendant denied liability and averred
that as he neared the sidewalk he saw
plaintiff's son to his left about six feet
from and facing the driveway; that he
stopped his car and that then the boy
stopped; that he then continued backing
his car; and that as he was backing
towards and across the sidewalk the boy
suddenly and unexpectedly attempted to go
around and behind the car and in so doing
was struck by the rear left fender when he
had reached the intersection of Jackson
street with the driveway; that he was una-
ware of the last movements of the boy until
after the accident had happened and that
as soon as the accident happened he
stopped his car and went to the boy's as-
sistance. He denies that he failed to give
timely warning of the movements of the

car and denied that he was negligent, and alleged that plaintiff's son was negligent and that his negligence was the proximate cause of the accident.

On these issues the case was tried and there was judgment in favor of plaintiff for $950.00 and defendant appealed.

## OPINION

After reading all of the evidence in this case and the able briefs of counsel for plaintiff and defendant therein we are satisfied that the case must be decided upon the testimony of James R. Moore, plaintiff's son, called in the record "Jimmy" Moore, and the defendant, Norwood K. Vance, as to the facts that existed just prior to and at the moment of the accident.

Plaintiff's son, James R. Moore, testified, page 3:

"I saw Mr. Vance backing out, and I stopped and looked to see if anybody was coming, and he stopped, and I thought that he was waiting for me to pass, and I started, and we bumped into each other, or the car knocked me down and ran over me."

Norwood K. Vance, the defendant, testified, pages 76, 77, 78, 84:

"I was driving slowly, backing slowly. * * * I stopped before I reached the sidewalk * * my reason for stopping was, I always stop, even at my house; I have to bring my car from the garage in the same way, and I stopped and then looked to see if I could continue; I stopped and saw a boy that I afterwards learned was Jimmy approaching the driveway; he stopped, and when he stopped I backed out. * * * As I came out, when I started out again, I faced toward Bolton and blew my horn because the trucks that go in and out of Jackson street have the right of way, and any car that was coming out Jackson street would be apt to be on the right side if they were observing the traffic laws. * * * When

I stopped my car I glanced out the car on the left hand side and I saw a little boy— I was afterwards informed that he was Jimmy Moore—approaching the driveway. I stopped, and this child stopped probably five or six feet, I would judge from the driveway on the sidewalk. I then started to back out into the street. I blew my horn and looked in the direction of Bolton avenue to see if there were any cars or any vehicles approaching or going out Jackson street. Well, as I got off the incline of the driveway I heard a child crying. I had no idea that I had hit anything or that I had hit this child, and had I not heard his cry it is probable that I would have come on uptown, but I immediately stopped my car, got out, and Dr. Price and Mr. Katz were there about the time that I got out. Dr. Price had picked this little child up. I asked him his name and he told me Jimmy Moore. I asked Dr. Price and Mr. Katz if they would take him home."

"Q. Now are you certain that in backing out, just before you got to the sidewalk, that you stopped your car before Jimmy stopped walking toward the driveway?

"A. Yes, sir, I stopped, little Jimmy stopped; you see, as I came to the middle of the curb I stopped my car, and then he stopped, and I backed on out. If the front wheel went over him, as Dr. Price testified, I never even felt it; I did not feel the motion of the car going over him.

"Q. Then, after seeing that he had stopped, before you undertook to resume your journey and go over the sidewalk, you said that you looked to the right, toward Bolton avenue?

"A. Yes, sir.

"Q. Jimmy was at that time on your left, he had stopped on your left?

"A. Yes, sir.

"Q. I will ask you to state again the reason why you looked to the right as you undertook to cross over the sidewalk into the street.

"A. For the reason that the trucks that go in and out of Jackson street have the right of way on the right hand side as this driveway where this accident happened is on the right side of Jackson street, and any car that was coming out of Jackson street would be apt to be on the right

hand side, if they were observing the traffic rules.

* * *

"Q. Did you make any sign to him out of that open window with your hand, or any that you were going to back your car, or any motion of your hand at all out of that window?

"A. The only motion that I made was the blowing of my horn.

"Q. You did not give him any signal with your hand?

"A. No, sir.

"Q. You did not put your hand out of the window?

"A. No, sir.

"Q. Now, when you last saw Jimmy, before the accident I mean, were you still or moving?

"A. I was still.

"Q. And he was still?

"A. Yes, sir; my motor was running, though.

"Q. When you last saw Jimmy your car was still and he was still?

"A. Yes, sir."

From the above evidence, the first question to be decided is whether or not the defendant was guilty of negligence. We think it is negligence for the operator of an automobile in backing his car over a sidewalk to stop his car on account of seeing a small boy standing or walking on the sidewalk within five or six feet of the driveway down which he is backing and to then turn his head and look to the right and resume backing over the sidewalk without again looking to make sure that the small boy is not in danger from his backing automobile.

When a small child is involved, the operator of an automobile should be very careful not to back his car over him, and when the operator of an automobile and a small child are both about to make use of the same portion of the sidewalk at the same time it is negligence on the part of the operator of the automobile to back his car upon the portion of the sidewalk about to be used by the small child without first looking in the direction of the child to be sure that he is not in danger from the backing automobile.

The next question to be decided is whether or not Jimmy Moore was guilty of contributory negligence.

As already quoted from his testimony, he testified:

"I saw Mr. Vance backing out, and I stopped and looked to see if anybody was coming, and he stopped, and I thought that he was waiting for me to pass, and I started, and we bumped into each other, or the car knocked me down and ran over me."

We find no evidence in the record that disproves this statement. The district judge who tried this case and saw and heard Jimmy Moore testify accepted his testimony as true and we also believe it to be true and it is convincing.

At the point on the sidewalk where the accident occurred Jimmy Moore had the right of way and it was not negligence on his part to assume that defendant would not resume backing his car over the sidewalk without first making sure that he was not backing into some pedestrian for whose benefit the sidewalk was maintained.

Jimmy Moore had the right of way. He knew that defendant had seen him and had stopped his car. It was not negligence on Jimmy Moore's part not to assume that defendant would disregard his right of way and back his car over him.

This brings us to the question of damages, and under the evidence and the authorities cited by defendant's counsel as to amount of damages allowed in similar cases we are convinced that the allowanc

of $500.00 for the use and benefit of Jimmy Moore is neither too low nor too high.

As to the other items of damages, allowed, namely: $450.00 to plaintiff individually, we think the evidence clearly establishes the following items, namely: Doctor's bills, $200.00; hospital bill, $30.00; and as to these items we understand there is no dispute as to the right of plaintiff to recover them if damages are to be allowed at all. The item of $110.00 paid by plaintiff to Mrs. Moore's niece for leaving her home in Arkansas and coming to Alexandria and nursing Jimmy Moore during the period of his disability is entirely reasonable we think. The item of $100.00 claimed by plaintiff for himself for one week's loss of time on account of his staying home ten days, we think is not established as one that should be allowed. Mr. Moore did not get home for two or three days after Jimmy Moore was hurt and at that time x-rays had been made of Jimmy's injuries and there is no suggestion in the evidence that it was even thought that the boy might not recover from his injuries or that Mr. Moore's services were necessary in order for the boy to have proper nursing. Besides, Mr. Moore was working entirely on a commission basis and there is no evidence in the record to show what amount of commissions he could have earned during the period he remained at home. This item cannot be allowed. As to the item of $52.50 for medicines and miscellaneous expense, Mr. Moore testified, page 23:

"Q. Now you have also alleged the sum of $52.50 for medicine and incidental expenses. Can you tell the court about those items?

"A. Well, I could not give you the exact figures; those figures are most of an estimate. I had absolutely no way in the world of telling just exactly. I arrived at that by taking items like the crutches that I had to buy.

"Q. What did that cost?

"A. Around $2.50 or $3.00, I don't recall exactly. Dr. Evans had them sent to the house and I paid for them. My wife had a cook that stayed there, and she was in the habit of leaving after dinner; and my wife had her stay there all day long and we had to pay her additional, possibly $1.50 per week, and then she stayed some three or four or five weeks, I don't know just how long; and besides the help, we had the expense of running the house; with this cook's additional pay, and we had my niece there, which added increased cost to the household expenses, and Jimmy required different things."

This testimony is entirely too indefinite as to any amount except the item of $2.50 paid for the crutches, and therefore cannot be allowed for any amount other than the $2.50.

This makes a total of $342.00 damages for which we think plaintiff individually is entitled to judgment.

For the above reasons, it is therefore ordered, adjudged and decreed that the judgment appealed from be amended by decreasing the amount allowed to plaintiff individually from $450.00 to $342.00 and that as thus amended and in all other respects the judgment be affirmed; plaintiff to pay the costs of this appeal.