KAOUGH v. HADLEY et al.

No. 1546.

Court of Appeal of Louisiana. First Circuit.

Feb. 20, 1936.

See, also, 165 So. 753.

Pujo, Bell & Hardin and Clement M. Moss, all of Lake Charles, and Gordon Boswell, of New Orleans, for appellants.

McCoy, King & Jones, of Lake Charles, for appellee.

DORE, Judge.

This is a suit sounding in damages and instituted by Thomas Augustus Kaough against Everett L. Hadley and Commercial Standard Insurance Company, and which damages he claims in the sum of $24,917.50 as the result of the death of his eleven year old son, Thomas Augustus Kaough, Jr., who was instantly killed in an impact or collision of his bicycle with the defendant Hadley's automobile driven by himself and at the intersection of Kirkman and West Cleveland streets in the city of Lake Charles, parish of Calcasieu.

A companion suit was also instituted against the same defendants by the divorced mother of the child, Bessie Brooks Kaough, in which she claims damages in the sum of $16,000.

The two suits were consolidated for the purposes of trial, but separate judgments were rendered by the trial judge, and we shall follow that course in the cases.

The specific acts of negligence alleged by the plaintiffs in both cases are substantially as follows:

"1. That Hadley was traveling at an unreasonable and reckless rate of speed and in violation of Ordinance No. 478 of the city of Lake Charles.

"2. Hadley was not driving with prudence and care and was not keeping a lookout ahead as the law requires, and therefore, was driving his automobile in violation of Ordinance No. 478 of the City of Lake Charles.

"3. Hadley was driving on the wrong side of Kirkman Street, in violation of Section 9 of Ordinance No. 478.

"4. Hadley did not apply his brakes upon seeing the danger and did not stop when he could have stopped and avoided the collision.

"5. Hadley did not sound his horn or give warning of his approach.

"6. Hadley did not drive so as to keep his car under control."

As opposed to these charges of negligence and consequent liability on the part of the defendants, they averred, (1) nonnegligence on the part of the defendant Hadley; (2) the "sudden emergency rule"; and lastly and in the alternative contributory negligence on the part of the deceased boy. The plaintiff in this case, Thomas Augustus Kaough, filed a supplemental and amended petition in which he alleged that on June 22, 1928, judgment of divorce was rendered in his favor and against his wife, Bessie Brooks Kaough, forever dissolving the bonds of matrimony, and granting unto him the care and custody of their minor son, the said Thomas Augustus Kaough, Jr. In this supplemental and amended petition he prayed as in his original petition, and the obvious purpose of the same was to justify the admissibility of evidence to enhance his claim for damages to the detriment of the claim of the mother.

The trial judge in a very exhaustive and carefully prepared judgment accorded judgment in this case as follows: In the sum of $2,600, jointly and severally, against the defendant Hadley and the Commercial Standard Insurance Company, and the additional sum of $2,817.50 against the defendant Hadley alone; thus aggregating a total judgment of $5,417.50, with interest and costs. In the companion suit of the mother, judgment was rendered as follows: In the sum of $2,400, jointly and severally, against the defendant Hadley and the Commercial Standard Insurance Company, and in the full sum of $2,600 against Hadley alone, thus aggregating the sum of $5,000.

Hadley prosecuted a devolutive appeal in both cases, but the Commercial Standard Insurance Company prosecuted suspensive appeals in both cases.

At this juncture it should be noticed that the policy of insurance issued to Hadley by his codefendant limited the latter's public liability to $5,000 for the death of one person, so that the aggregate liability for the death of the deceased boy cannot exceed $5,000 in both cases, and as far as the insurance company is concerned. Both the case of the plaintiff and the defendants were ably and exhaustively presented to the district court, and full and convincing arguments were presented to this court orally and in briefs. The district judge in his findings on the facts was careful to review the testimony of all of the witnesses respecting the controlling physical conditions that obtained at the time of the collision between the bicycle propelled by the deceased and the automobile driven by the defendant Hadley, and

these indisputable facts, taken in connection with the testimony of Hadley himself, has convinced us that, in the last analysis, the defendants are entirely relegated to the defense of sudden emergency, and, if they are to be liberated from the tragic consequences of the collision, it must be upon this theory and this theory alone. The district judge in his judgment correctly arrives at the following conclusion:

"As a matter of fact, there is no reason why Hadley could not have seen the boys entering Kirkman Street when he was 200 feet or more distant, and considering the distance the boys traveled after he saw them, and to the point of collision, and considering the speed of the bicycle and of the car, Hadley must have been at least 200 feet away when he first saw them going into Kirkman Street."

Here is a deduction, fully justified by the evidence, that Hadley had the last clear chance to avoid the catastrophe. He himself admits in his testimony that he saw the boys "playing" and "zigzagging" on the bicycle in West Cleveland street as they approached the intersection, and it is further in evidence that he admitted he saw the boys "see-sawing" in front of him. Now, his own admissions as to the signal of danger incident to a condition which he himself described is vouchsafed in his own testimony. He said: "I always watch children and cows, because you can never know what they will do."

And in referring to the action of the boys in question he admitted, "I couldn't tell what they were going to do."

And still again he admits: "I can't always tell what a child will do."

We hold that under the admissions of the defendant Hadley himself he was greatly at fault in approaching the intersection in question at an unlawful speed at from 30 to 35 miles per hour, and without taking any precaution whatever to avoid a possible collision with the bicycle propelled by the deceased. It is certain that his own experience and observation plainly dictated to him that he should have immediately brought his car under control, and, as stated in Moore v. Vance, 4 La. App. 353, that "in no event * * * conceivable to an intelligent man" would he collide with the bicycle.

■■ As to the contributory negligence preferred against the deceased, we conclude from all of the evidence in the case that such plea cannot be maintained here. We agree with the statement of the trial judge, and which is fully fortified by the evidence, when he stated:

"According to Hadley's own testimony, he struck the boys at about the point where they turned toward the southeast, which was the point where the boys had a right to be, if they were going into East Cleveland or if they were going northward on the east side of Kirkman, and what is more important, at a point where the law required Hadley not to be, and in the court's opinion this constituted actionable negligence on the part of Hadley."

The deceased boy was eleven years old, and, while legally capable of contributory negligence, at the same time the law does not expect or require of a youth of that age the same degree of judgment and calm and deliberate action as would be expected of an adult.

The rule is correctly stated in the case of Shally v. New Orleans Public Service, 1 La.App. 770, thus:

"The plaintiff was a boy sixteen years old at the time of the accident.

"He could be charged with contributory negligence. But he could not be expected to possess the same degree of prescience, caution and intelligence of an adult, nor could he be judged by the same rigor of law applicable to the latter."

■ We are thus brought to serious consideration of the only defense which, in our opinion, is available to the defendants in this case, and that is the sudden emergency rule. The pretensions of the defendants on this phase of the case are epitomized in the brief filed on behalf of the defendant Hadley in these words:

"Even after he saw them come into the street, the emergency that existed after they suddenly turned the bicycle in an opposite direction was not created by any negligence on the part of Hadley, but was due solely to the negligent operation of the bicycle and the attempt of the boys to cross directly in his path. We submit that, although Hadley may have chosen a better method of avoiding the accident when confronted with the emergency, it can not be held that his act was not that of a person using ordinary care and acting on his best judgment under the situation. A mistake in judgment, when confronted with a sudden emergency of this nature,

does not cause one to be liable, as is shown by the following decisions. * * * "

In support of this theory advanced by the defendants, they cite a number of cases, and which it is well that we notice. The first case referred to by counsel is that of Daigle v. Cobb, 18 La.App. 212, 138 So. 213. In that case the court held that the driver of the automobile did not bring about or contribute to the emergency, and, in effect, found that the emergency was created, not by Mrs. Cobb, the driver of the car, but by the injured party. This case finds no application here, because we have held that the emergency, if any, was created by the defendant Hadley.

The principle announced in Martin v. Cazedessus, 15 La.App. 100; 130 So. 129, 132 is not in point, because the Court of Appeal in that case simply held:

"An automobile driver, who by the negligence of another, and not by his own negligence, is suddenly confronted by an emergency and is compelled to act instantly to avoid a collision or injury, is not guilty of negligence if he makes such such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice."

This case states the true doctrine of "sudden emergency," and does not justify Hadley, and cannot be applied to the instant case, for the simple reason that we have already held that Hadley was negligent in two important particulars. He had the last clear chance to avoid collision with the bicycle, and he did not act in the emergency which he pretends confronted him with even ordinary care and caution. Instead of applying his brakes and stopping, or attempting to stop, he accelerated his speed when he was on the wrong side of the street, and, even though the application of the brakes might not have avoided this tragedy, at the same time he did not exercise that degree of judgment and prescience put upon him by the law and the facts in this case. Another case cited is that of Buckner v. Powers, 12 La.App. 630, 125 So. 744, 748. That case is typical of the application of the last clear chance doctrine. As stated by the court, the defendant was confronted with a sudden emergency which he did not create or contribute to bring about, and it is significant to quote this excerpt from that opinion:

"One in peril, or who sees another in peril, when immediate action is necessary to avoid it, cannot exercise the same presence of mind and cool deliberation as under other circumstances."

This case is not persuasive under our findings of the facts in the instant case.

The other case cited by counsel for defendant Hadley is that of Testard v. Board of Commissioners of Port of New Orleans, 8 La.App. 238. We can readily dispose of this citation by quoting the following from that decision:

"The car of plaintiff could not be seen until the Ford had been forced out of the line by the sudden stopping of plaintiff's car, and when seen created a hazard which defendant's driver *had no reason to anticipate, nor guard against.*" (Italics ours.)

The final case referred to by counsel for Hadley, that of Queen v. Manheim, 9 La. App. 312, 120 So. 486, has no application whatever to the instant case.

We therefore conclude with the trial court that the plaintiff has fully substantiated his claim for damages by the great preponderance of evidence and that the defendants are therefore liable to him as the father of his deceased minor son.

■ We are inclined to travel a little beyond the findings of fact as established by the trial judge, and believe that it was incumbent upon the defendant Hadley, when he was some distance away from the intersection in question and saw the deceased and his companion on a bicycle "frolicking," he should have continuously sounded his horn. It may be contended that such alarm would not have been effective, but it was clearly incumbent upon him as he approached this intersection, and seeing the dangerous or potential dangerous situation, to have exercised and used every means at his command to avoid the collision. Plainly, he had two instrumentalities which he could have used under the circumstances, the more potent was his emergency brakes, and the other was his horn, and neither of which it is shown from the evidence he effectively used.

### Quantum of Damage.

The most serious point in this case is the question of the quantum of damage, and especially in view of the fact that the plaintiff by virtue of a judgment rendered as aforesaid has been divorced from his wife, the mother of the deceased child,

and by that decree of divorce he was granted the care and custody of the child. Apparently no modification of that decree of the court, severing the marital ties, and rendered on March 8, 1926, and placing the burden and the obligation of the "permanent care, custody and control of the minor child, Thomas Augustus Kaough, Jr.," etc., upon the plaintiff in this case has ever been requested, judicially or otherwise. The mother and plaintiff in the companion suit to this one was at fault respecting the divorce, and it is in evidence that she has not seen or been associated with the deceased child for something over a year. It is quite apparent, therefore, that there are certain elements of damage which ought to accrue to the father in this case and which ought not to be considered in awarding damages to the recalcitrant wife.

██ This matter of the quantum of damages to be awarded to a parent for the death of a minor child has given the appellate courts of this state much concern, and in almost every instance where the question arises the courts are perplexed and greatly vary in their estimate. It seems that age, contributions, affiliation, domestic association, and prospective helpfulness all enter into the sum total. It is also considered that the suffering of a minor child is heritable and properly recoverable in an action of this character. In the common-law states, it is generally conceded that the wife, even though not separated by divorce decree, would not have any right of action for recovery of damages, and in a case like the instant one, but that question has been definitely set at rest by repeated adjudications of our Supreme Court under article 2315, Rev.Civ.Code. We only refer to this matter in order to accentuate the conclusion which we have arrived at respecting the quantum of damages to be allowed in these two cases.

It is generally conceded by bench and bar that in this state no yardstick for the estimation of damages to the parent or parents for the death of a minor child is available, and that every case presented to the courts must stand upon the peculiar facts or circumstances attaching to the same.

██ In these circumstances we believe that the best and safest guide in this case is to follow and adhere to the adjudications of our Supreme Court, but which, of course, must yield as to amounts to changing conditions, and particularly as to the purchasing power of money. Our Supreme Court in a number of cases has recognized that damages should be increased in proportion to the diminishing purchasing power of a dollar, and we shall take that into consideration in the assessment of damages in this case.

We can find no specific jurisprudence, nor has counsel for the defendant Hadley pointed to any jurisprudence, respecting the serious question as to whether the plaintiff in this case who obtained a divorce against his delinquent wife and was awarded "the permanent care, custody and control of the minor," etc., would be entitled to a larger amount of damages than the wife. The only enlightening adjudication which we have found on this subject, and which indicates an estimate of damage to which the plaintiff in this case is entitled to, is the case of Johnson v. Industrial Lumber Co., 131 La. 897, 60 So. 608.

At page 909 of 131 La., at page 612 of 60 So., Justice Monroe, as the organ of the court, states:

"In default of children or widow, the right to recover for the suffering thus described devolves upon the parents of the deceased, and the surviving mother, between whom and the father, as we have stated, there is a judgment of separation a mensa et thoro, awarding her the custody of the children, is entitled to recover one-half of any amount which may be assessed on that account. The mother is also entitled to recover, on her own account, for the injury, moral and mental, as well as material, sustained by her as the result of her son's death; that is to say, she is entitled to damages for the injury to her feelings resulting from the loss of her son and of the comfort and happiness which she might reasonably have looked forward to from his society and from his filial affection and offices, and is also entitled to recover for the material assistance of which she was in need and which he was rendering at the time of his death. Act No. 120 of 1908; Underwood v. Gulf Refining Co., 128 La. [968] 986, 55 So. 641; Cherry v. Louisiana & A. R. Co., 121 La. 471, 46 So. 596, 17 L.R.A.(N.S.) 505, 126 Am.St.Rep. 323; Bourg v. Brownell-Drews Lumber Co., 120 La. 1009, 45 So. 972, 124 Am.St.Rep. 448. Considering the

different elements entering into the question, which is at best a difficult one, we are of opinion that the amount of the award should be increased, as prayed for by the plaintiff. It is therefore ordered, adjudged, and decreed that the judgment be amended by increasing the amount for which defendant is condemned to $5,000, and, as thus amended, affirmed; defendant to pay all costs."

In his deliverance the eminent justice says: "The mother is *also* entitled to recover, on her own account, for the injury, moral and mental, as well as material, sustained by her as the result of her son's death."

Our judgment is that in this case the husband, who had the permanent care, custody, and control of the deceased, is entitled to a greater amount of damage than could be claimed by the divorced wife, and, in estimating the quantum to be allowed the plaintiff in this case, we have arrived at the following conclusion: He is entitled to a judgment against the defendants Everett L. Hadley and the Commercial Standard Insurance Company, jointly and severally, in the sum of $3,000, with 5 per cent. per annum interest from March 1, 1934, until paid. He is further entitled to a judgment against the defendant Everett L. Hadley in the sum of $500, with judicial interest from March 1, 1934.

It is for these reasons ordered and adjudged that the judgment of the district court is amended as to the attribution of the sums in this, to wit:

It is ordered that there be judgment against the defendants Everett L. Hadley and Commercial Standard Insurance Company jointly and severally, and in favor of the plaintiff, Thomas Augustus Kaough, in the sum of $3,000, with 5 per cent. per annum interest thereon from March 1, 1934, until paid.

It is further ordered that there now be judgment against Everett L. Hadley in the sum of $500 and in favor of the plaintiff, Thomas Augustus Kaough, with 5 per cent. per annum interest from March 1, 1934, until paid.

It is further ordered that the defendants pay all costs to be taxed in the district court and in this court.

OTT, J., not participating.