AYRES, Judge.
This is an action in tort brought by the parents of the late James Edwin Watson, aged 20 years, who was killed in a collision between his motorcycle, on which he was riding, and a Chevrolet automobile owned by Stanley D. McEacharn, Sr., but operated at the time by Stanley D. McEacharn, Jr., who had his father’s consent. Also made defendant is Lumbermens Mutual Casualty Company, McEacharn’s liability insurer.
Plaintiffs contend that the negligence of Stanley D. McEacharn, Jr., while operating an automobile on a heavily traveled highway at an excessive and unlawful rate of speed and in the wrong lane of travel, particularly in his failure to maintain a proper lookout and in disregard of the rights of James Edwin Watson, was the sole and proximate cause of the accident. In the alternative, it is contended if their son should be found to have been negligent then that the evidence establishes that Stanley D. McEacharn, Jr., had the last clear chance to avoid the accident.
Defendants contend primarily that Mc-Eacharn was without fault and that the negligence of the late James Edwin Watson in failing to make proper observation and maintain a proper lookout, and in making a left turn without first ascertaining it could be made in safety, thus creating an emergency to McEacharn, which McEacharn unsuccessfully endeavored to avoid, constituted the sole proximate cause of the accident, and, moreover, that Watson had the last clear chance to avoid the accident.
In the alternative, it was contended that Watson was guilty of contributory negligence, in addition to the above, in respect to his failure to yield the right of way to the McEacharn car, and in failing to avail himself of the last clear chance to avoid the accident.
The trial court concluded from the evidence that McEacharn had the last clear chance to avoid the accident but failed to avoid it because of excessive speed, failure to keep a proper lookout ahead to discover the presence of those who may be in danger, failure to sound his horn, and failure to apply his brakes in time. It was therefore concluded that McEacharn’s negligence in these respects constituted the proximate *140 and immediate cause of the accident, and the negligence of Watson in placing himself in a position of danger, the remote cause. .Accordingly, defendants were held liable in damages.
From a judgment awarding each of the parents $7,500 for the loss of their son, together with funeral expenses and damages for loss of the motorcycle, defendants have appealed. Plaintiffs have answered the appeal, praying that the award be increased to $102,021, as originally sued for.
The accident occurred on State Highway 17, a concrete paved highway about 1.2 miles south of Oak Grove, West Carroll Parish, Louisiana. In the vicinity of the accident the highway has a width of 18 feet with the usual turf shoulders, runs generally north and south, and is straight and level for approximately a mile north of the scene of the accident. The accident occurred at or near a “T” intersection of a gravel highway leading east and known locally as the Airport Road. There were •no signs, however, indicating the existence of this intersection.
On December 15, 1955, at approximately 7:30 P.M. James Edwin Watson was traveling south on the aforesaid highway on his Harley Davidson motorcycle, intending to make a left turn into the aforesaid intersection and proceed to his residence, and that of his parents, located a short distance therefrom. Watson was followed by a friend, Douglas Simpson, in a Ford automobile, who also intended to turn into the intersection and drive to the Watson residence. While Watson and Simpson were thus proceeding, Simpson some considerable distance behind Watson, Stanley D. McEacharn, Jr., approached, overtook •and passed Simpson and overtook and struck Watson’s motorcycle in the east or left lane of traffic, after skidding 110 feet, .and after which his car continued forward 237 feet further, coming to rest in the •ditch on the right or west side of the highway. The motorcycle was carried forward by the car and thrust or deposited 81 feet further down the highway, likewise coming to rest in the ditch on the west side of the highway. Watson was found on the right shoulder of the road, about halfway between the car and motorcycle. Watson evidently was instantly killed, or died soon after said collision, as the result of the injuries sustained by him, without ever re* gaining consciousness.
There were only two eye witnesses to the accident — McEacharn and Simpson. Simpson testified he was driving approximately 450 feet behind Watson when he was overtaken by McEacharn; that Watson was clearly visible on his motorcycle even before McEacharn came alongside and passed his car, and even more so during that time, obviously due to the double set of car lights. As to McEacharn’s speed, his own estimate was 60 miles per hour. Simpson said it was 90 miles per hour, and Trooper Guice, who investigated the accident, estimated it at 75 miles per hour, but, at the moment of impact, after skidding 110 feet, at 60 miles per hour. Simpson estimated his own speed at approximately 45 miles per hour.
Simpson testified that when the Mc-Eacharn car was alongside his, Watson was out in front about 450 feet and was traveling, angling toward the intersection, at about five miles per hour and was seen to give a signal of his intention to make a left turn by extending his left hand. Mc-Eacharn denied seeing any such signal but admitted as he passed the Simpson car he saw, by a glimpse, a man on a motorcycle.
Both McEacharn and Simpson testified that Watson never made, so far as they were able to ascertain, any observation to the rear by turning his head and looking. McEacharn saw no movement on Watson’s part that would indicate that Watson knew he was in a position of peril. Simpson’s, testimony is to the same effect. McEacharn further testified that when alongside the Simpson car and from 115 to 120 feet behind Watson, he first saw the motorcycle, but did not see Watson give any signal indicating an intention to turn. The record, however, leaves no doubt that Watson placed himself in a position of peril by *141 taking to the left side of the highway, particularly in view of the rapidly approaching automobile from his rear. Neither does the record leave any doubt concerning Watson’s complete ignorance of the approach of the McEacharn car at a fast and excessive rate of speed.
While defendant’s driver admits he sounded no horn, he says he blinked his lights. We are not given to understand how such action could constitute a warning to forward vehicles proceeding in the same direction.
The trial court resolved the factual issues as follows:
1. McEacharn was approximately 4S0 feet behind Watson when he was in the act of passing the Simpson car.
2. Watson was clearly visible when McEacharn was in the act of passing the Simpson car.
3. When McEacharn was in the act of passing Simpson, Watson was in a position of peril of which he was unaware.
4. If McEacharn had seen Watson when he should have seen him, and/or, if McEacharn had his car under proper control when he saw or should have seen Watson, McEacharn could have avoided the accident.
Our own study and analysis of the evidence convinces us of the correctness of His Honor’s conclusions on these factual issues. If it, therefore, be conceded that Watson was negligent in attempting a left turn at the time and in the place he undertook such maneuver, his negligence is immaterial, inasmuch as Mc-Eacharn had the opportunity and last clear chance to avoid the accident. By his own testimony McEacharn saw Watson in his lane of travel at a considerable distance ahead, and, from his own testimony, knew Watson was unaware of the presence or the approach of the McEacharn car. Nevertheless, McEacharn did not sound his horn or give any warning of his approach. Neither was he able to, nor did he, on account of his speed, attempt, a turn to the right through fear of striking the Simpson car, as his speed was too fast to enable him to steer his car into the right lane behind the Simpson car.
Defendants contend, however, that the doctrine of last clear chance, or of discovered peril, has no application in the instant case because it is asserted that the negligence of the deceased was the proximate cause of the accident. Cited in support of this contention are three decisions of ths court, namely: Nugent v. Milburn, La.App., 47 So.2d 377; Coleman v. Smith, La.App., 63 So.2d 171; Davis v. Great American Indemnity Co., La.App., 76 So.2d 103. The gist of the rulings in these cases is that where an accident is caused by the contemporaneous, concurrent negligence of both parties, and where the accident could have been avoided by the exercise of due diligence by either of the parties, both parties are at fault and neither can recover, as the fault of each operated directly to cause the injury.
In this connection it was stated in Rottman v. Beverly, 183 La. 947, 165 So. 153, 155:
“It is frequently stated by courts that there can be no recovery in negligence cases ‘where it appears that the negligence of the plaintiff continued until the moment of the accident,’ but that is not a correct statement of the rule. Thus broadly stated, it is misleading, for it is not true in a strict legal sense that a plaintiff is barred from recovery under any and all circumstances merely because he was guilty of negligence which continued down to the moment of the accident which caused his injury, and this court has never so held.”
The court further said:
“Where the danger is brought about by plaintiff’s own negligence, but is not discovered by defendant, because *142 of a failure to exercise due care, the parties are on equal footing. Their faults are mutual, their negligence is concurrent. It arises from the same 'cause, viz., failure to observe. The negligence of each party is a contributing cause of the accident. In such case it cannot be determined whether the negligence of the plaintiff or that of the defendant was the proximate and immediate cause of the injury, and neither party can recover.
“But if a plaintiff negligently puts himself in a place of danger and his negligence and danger are actually discovered by the defendant, then there devolves upon the defendant a duty which intervenes or arises subsequent to the negligent acts of the plaintiff, and that duty is to save the plaintiff from the consequences of his negligent acts if he can. The first duty of those who operate engines or motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger. If they perform that duty and discover that some one is in danger, then a second duty arises, and that is to use every possible available means to avert injury. If the defendant fails to perform that duty, his negligence in that respect is regarded as the proximate and immediate cause of the injury and the negligence of the plaintiff in putting himself in a place of danger, the remote cause. In such cases the last clear chance doctrine applies even though plaintiff’s negligence continues up to the accident.”
In explanation and amplification of its ruling in the Rottman case, the Supreme Court took occasion to say in Jackson v. Cook, 189 La. 860, 181 So. 195, 197-198:
“Apparently, the judges of the Court of Appeal, First Circuit, think we intended to hold, and did hold, that, merely because the defendant in such cases fails to discover the plaintiff’s peril, he is not liable; that the effect of our ruling is to absolve the defendant from the duty of being vigilant. But the following quotation from that opinion ([165 So.] page 156) demonstrates the error into which they have fallen:
“ ‘The first duty of those who operate engines or motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger.’
“This makes it clear enough, we think, that we did not intend to, and did not, set aside the well-recognized and settled rule that the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what they can see they must see and in legal contemplation they do see; that their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability.
“Up to the time the Court of Appeal decided the Rottman case [Rottman v. Beverly, La.App.], 162 So. 73, the jurisprudence relating to the last clear chance doctrine was confusing. This court in several cases had said in general terms that, where the negligence of a plaintiff continued up to the moment of the accident, there could be no recovery. Such statements had been made without qualification, and what we held in the Rottman case was that such statements were too broad, and we qualified the rule by holding that, when a defendant sees another in peril of which the other is not aware, then a second or subsequent duty arises and devolves upon the defendant, which duty is to use every possible available means to avert injury. We said ([165 So.] page 156):
“ ‘If the defendant fails to perform that duty, his negligence in that respect is regarded as the proximate and immediate cause of the injury and *143 the negligence of the plaintiff in putting himself in a place of danger, the remote cause. In such cases the last clear chance doctrine applies even though plaintiff’s negligence continues up to the accident.’
“The only difference between the Rottman case and the case presently before us is this: In the Rottman case Mrs. Rottman was guilty of gross negligence which continued up to the moment of the accident. Beverly, the driver of the automobile, actually saw her in her perilous position in time to avert the accident had he used proper precautions. In the present case the plaintiff was guilty of gross negligence which continued up to the moment of the accident. The driver of the car did not see, but could have seen, plaintiff in his peril if he had been looking ahead. The mere fact that the driver of the car in this case did not see plaintiff does not absolve the defendant from liability, because it was the duty of the driver to look, and, according to the findings of both courts, he was not looking. The Rottman case is not authority for holding that, merely because the driver of the car in this case did not actually see the plaintiff, the defendant is not liable.”
For the same reasons assigned in the Jackson case, the doctrine of discovered peril clearly has application in the instant case. In this regard it may be stated that Watson placed himself in a position of peril in the left lane of traffic. That he was in such a position of peril was unknown to him but known to McEacharn as the driver of the approaching car, or at least should have been known to him had he been making proper observation and keeping a vigilant lookout. Even should it be conceded that Mc-Eacharn did not timely discover Watson’s peril, that fact is unavailing as a defense for the reason that the answer to such failure is that McEacharn was not keeping a proper lookout and except for his own reckless speed he could have, and no doubt would have, taken action and avoided the collision and saved a life. It, therefore, must be held that the defendants are liable and should respond in damages.
Finally for consideration is the award of damages to which plaintiffs are entitled.
Plaintiffs were married October 30, 1927, and are the parents of six children, including the deceased, who was born March 11, 1935, and who was, therefore, at the time of his death, 20 years of age. At that time the father was 51 and the mother 46 years of age. The mother is a housewife and has not, since her marriage, engaged in any outside work through which the family income would be increased. The father is an unskilled laborer with a fifth grade education. His occupation until 1949 was farming, but thereafter he engaged in various work, principally pipelining, where his annual earnings for the past five years are about $3,000. However, during 1952, while performing services in connection with his employment, he lost his right hand and on account of this impairment his ability to obtain and retain employment has been adversely affected.
The deceased, who had completed a ninth grade education at the local high school, worked in various lines of endeav- or and finally also turned to pipelining, where he earned $1.45 per hour. Taking into account the long hours and overtime worked, his weekly earnings ranged from $125 to $130. The evidence reflects that he regularly made substantial contributions to the family budget — at times as much as half of his earnings. Fie possessed an excellent reputation, was energetic and very industrious, and was close to his family. He was loving, gentle and kind; his conduct exemplary and commendable — a matter of joy and happiness to his parents, who reciprocated his love and affection. In his untimely and tragic *144 death plaintiffs have suffered immensely in the loss of the love, affection and companionship of their son. From a monetary viewpoint their pain, grief and suffering are immeasurable. In addition, however, the parents have lost the not inconsiderable present assistance and future support of their son, which he was rendering to his handicapped father’s family.
Plaintiffs contend that the award should be increased. There is no question as to the justification for an award of substantial damages in this case. In support of this contention, plaintiffs cite these cases: Himes v. Avinger, La.App., 85 So.2d 304; Brooks v. State Farm Mutual Automobile Ins. Co., La.App., 91 So.2d 403; Duree v. State, La.App., 96 So.2d 854.
In the Himes case we approved an award of $10,000 to each of the parents of a fifteen-year old boy killed when a motorist struck the motor scooter on which the deceased was riding. In the Brooks case we granted an award of $7,-500 to each of the parents of a six-year old son who, on falling from a car, was run over, crushed and killed by a following car. In the Duree case our brethren of the First Circuit awarded a widow and child $10,000 and $5,000, respectively, for the loss of the love, companionship and affection of their 29-year old deceased husband and father, who was killed in an ambulance-train collision. An additional award was made for loss of support.
After consideration of the awards made not only in these cases but in many others, and after taking into account all the facts and circumstances of this case, we conclude that the award as to the principal item of loss to each of the plaintiffs should be increased to $12,500, which, under present economic conditions, more nearly, in our opinion, meets the ends of justice. No issue was urged as to the allowance for funeral expenses and for the property loss in the motorcycle.
Accordingly, for the reasons assigned, the judgment appealed is amended by increasing the award of plaintiff, William Barnes Watson, to $14,194.46, and the award of Mrs. Beulah Mae Anthony Watson to $12,775, and, as thus amended, the judgment is affirmed.
Amended and affirmed.
GLADNEY, J., dissents.