126 So.2d 777 (1960)
Margaret H. PALMER et al.
v.
AMERICAN GENERAL INSURANCE COMPANY et al.
George H. WILCOX
v.
AMERICAN GENERAL INSURANCE COMPANY et al.
William P. HONEYCUTT, Ind., et al.
v.
AMERICAN GENERAL INSURANCE COMPANY.
No. 5126.
Court of Appeal of Louisiana, First Circuit.
December 19, 1960.
Rehearings Denied February 20, 1961.
Certiorari Denied April 7, 1961.
*778 White & May, Baton Rouge, for Margaret and Henry Earl Palmer, plaintiffs-appellees-appellants.
Kennon, White & Odom, Baton Rouge, for American Gen. Ins. Co., defendant-appellant.
John R. Rarick, St. Francisville, for Arthur E. White, plaintiff-appellee.
Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for Southern Farm Bureau, defendant-appellee.
Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, Kilbourne & Dart, St. Francisville, for Wm. P. Honeycutt, defendant-appellee.
Before ELLIS, LOTTINGER, JONES, HERGET, and LANDRY, JJ.
ELLIS, Judge.
These three consolidated cases arise out of an automobile accident which occurred on August 19, 1959, on Louisiana Highway No. 10 in the Parish of West Feliciana between the towns of St. Francisville and Jackson. Mrs. Leon A. Picou loaned a 1959 Volkswagen owned by her husband, Leon A. Picou, to Jane Irwin, a minor who was driving it when a collision occurred with a 1957 Ford Sedan owned and operated by William P. Honeycutt. Accompanying Jane Irwin as passengers were two minor girls, Diane Wilcox, who was sitting on the right front seat, and Carol White, who was sitting on the back seat. As a result of this accident, Diane Wilcox was injured and Jane Irwin and Carol White were killed.
Accompanying William P. Honeycutt, the owner and operator of the 1957 Ford involved in the accident, were his wife, Emily Odom Honeycutt, and their three month old son, Robert Honeycutt.
*779 The accident occurred when the 1959 Volkswagen driven by Jane Irwin in an easterly direction, for some unexplained reason, spun out of control and into the westbound traffic lane and directly into the path of the 1957 Ford operated by William P. Honeycutt.
The collision occurred when the front end of the Ford struck the rear end of the Volkswagen and knocked the Volkswagen off the road and into the ditch.
Southern Farm Bureau Casualty Insurance Company was the liability insurer of the William P. Honeycutt vehicle and American General Insurance Company was the liability insurer of the Picou vehicle.
Three suits were filed against American General Insurance Company, defendant-appellant, but no claim was made by the parents of Jane Irwin, the deceased driver of the Volkswagen.
The first suit was instituted by Henry Earl Palmer and Margaret H. Palmer, the stepfather and mother of Carol E. White, against American General and Southern Farm Insurance Companies. Both defendants filed exceptions of no right of action as to Henry Earl Palmer, contending that a stepfather cannot recover for the injuries or death of his stepchild; and both defendants filed exceptions of nonjoinder of a proper and indispensable party, contending that the Palmers' petition affirmatively showed that the father of Carol White, Arthur E. White, survived his daughter, and was a necessary party to the suit under the holding of Reed v. Warren, 1931, 172 La. 1082, 136 So. 59. The trial court referred the exceptions of no right of action to the merits, but sustained the exception of nonjoinder. An attorney at law was appointed to represent Arthur E. White, an absentee. Arthur E. White subsequently employed the appointed attorney and instituted suit.
The second suit was instituted by William P. Honeycutt, individually and for the use and benefit of his minor son, Robert Curtis Honeycutt, and by Mrs. Emily Odom Honeycutt, against American General alone.
The third suit was by George H. Wilcox, individually, and as the administrator of the estate of his minor daughter, Diane Wilcox, against American General and Southern Farm.
These three suits were consolidated for trial with a fourth suit, brought by Leon A. Picou, Jr., against Southern Farm to recover the property loss to the Volkswagen. The trial lasted two days, March 24-25, 1960; argument on the question of liability was heard at the termination of the trial. In oral reasons dictated into the record, the trial court awarded judgments against American General alone in favor of all the plaintiffs, except Henry Earl Palmer, and ordered briefs on quantum of damages and on the question of whether or not Henry Earl Palmer had a right of action. On April 29, 1960, the trial court in written reasons dismissed the suit of Henry Earl Palmer and awarded damages to the successful plaintiffs.
By separate judgments prepared in each suit, the lower court awarded Margaret H. Palmer, mother of Carol E. White, deceased, $35,000 for loss of love, companionship, and affection and mental pain, anguish and grief suffered by her. An award of $5,000 was made to Margaret H. Palmer for the pain and suffering of Carol E. White before her death.
Henry Earl Palmer, the stepfather of Carol E. White, was denied recovery in capacity of loco parentis as well as any loss that he suffered as the head and master of the second community.
Arthur White, the natural father of Carol E. White, was awarded $10,000 subject to the restriction that, "said sum to be deposited in the registry of this court and must not be used in any way by Arthur E. White and in fact can never be used except upon the permission of the Court and then, only for the benefit of the two surviving sisters, Janice White and Theresa *780 White, and said money must not and will not ever be transferred to Montana, the residence of the father, Arthur White, and Arthur White is not to benefit in any way from said money."
George H. Wilcox, the father of Diane Wilcox, was awarded $256 for medical expenses; $20,000 for the use and benefit of his daughter for personal injuries; and $650 for medical expert fees taxed as costs.
William P. Honeycutt, individually and for the use and benefit of his minor son, Robert Curtis Honeycutt, was awarded $20,000 for personal injuries to Robert Honeycutt, plus all medical bills to date and $100 for future medical bills.
William P. Honeycutt was awarded $500 for injuries to his chest plus all medical expenses incurred.
Emily Odom Honeycutt was awarded $3,000 for injuries to her elbow and ankle, shock and mental anguish.
Separate appeals were taken by American General and subsequently George H. Wilcox, Margaret H. Palmer, and Henry E. Palmer appealed separately. Arthur E. White answered the appeal of American General, praying that the judgment of the lower court be amended to delete certain restrictions in the judgment of the trial court, and as amended, prayed that the judgment be affirmed.
By agreement of counsel, it is admitted that liability for the injuries complained of rests upon American General Insurance Company, and that William P. Honeycutt and his liability insurer, Southern Farm Bureau Casualty Insurance Company, are free and clear of any negligence and resulting liability in the case. Therefore, the only question presented on this appeal relates to quantum of damages due the several parties involved and the claim of Henry E. Palmer.
Commencing with the survival action for the death of Carol E. White, we find that she was survived by the natural mother, Mrs. Margaret H. Palmer, her stepfather, Henry Earl Palmer, and her natural father, Arthur E. White. The record shows that Carol E. White was born on September 3, 1941, and she was thus almost 15 years old at the time of her death. At the same time Carol was born, Janice White, a twin sister, was born to Mrs. Palmer. On August 21, 1946, another child was born to Mrs. Palmer. Therefore, three children were born of the marriage between Mrs. Palmer and Arthur R. White. Since the marriage of Mrs. Palmer to Henry E. Palmer, two other children have been born.
From the testimony in the record, it appears that Carol White was a sweet, energetic, helpful, home loving teenage girl approximately 15 years of age. She loved the outdoors and was always eager to assist her stepfather and mother with whatever tasks that arose. Henry E. Palmer, her stepfather, testified that Carol drove the tractor on the farm and in fact ran the farm in his absence. Although Margaret Palmer, the mother, did not testify, we are convinced from the testimony of Henry E. Palmer that Carol White was dearly loved by her mother, stepfather and surviving sisters, and will be sorely missed by all those who knew her. The trial judge, perhaps going beyond the legally accepted bounds of judicial cognizance, stated that it was apparent that Mrs. Palmer was in no condition to testify from his observance of her; that she was on the verge of a nervous breakdown. We feel that the trial judge was justified in this observation and since there is abundant testimony as to the nature of Carol White, we are convinced that her mother, Margaret Palmer, did suffer shock, grief, mental pain and anguish, and the loss of love, companionship and affection of her daughter.
For the shock, grief, mental pain and anguish, and the loss of love, companionship and affection of Carol White, her mother, Margaret Palmer, was awarded $35,000 by the trial judge. Although we do not doubt that Mrs. Palmer suffered *781 as severe a loss as a parent can experience, we feel that the award was excessive in view of the jurisprudence.
From the numerous cases cited by both appellant and appellee, we feel that an award of $12,500 to Mrs. Margaret H. Palmer would be consistent with the jurisprudence and facts of this case.[1]
The lower court awarded Margaret H. Palmer $5,000 for the pain and suffering endured by Carol White before her death. Generally, under our jurisprudence, it is necessary for a survivor in a survival action under art. 2315 of the LSA-Civil Code to show that the decedent did in fact suffer shock, pain and suffering before death; and that unconsciousness of the decedent *782 from the time of the accident to the time of death precludes recovery. Chanson v. Morgan's L. & T. R. R. & S. S. Co. et al., 1 Cir., 1931, 18 La.App. 602, 136 So. 647; Todd v. New Amsterdam Cas. Co., La.App. Orleans, 1951, 52 So.2d 880; Andrus v. White, La.App. 1 Cir., 1958, 101 So.2d 7.
Counsel for appellee, Mrs. Palmer, cited numerous cases which we do not feel are in point.
In Langenstein v. Reynaud, 1939, 13 La. App. 272, 127 So. 764, the decedent was in a coma for four days before he died, but his sister testified that he seemed to recognize her. The court cited Crisman v. Shreveport Belt Railway Co., 110 La. 640, 34 So. 718, 62 L.R.A. 747, in which a man with his head crushed and one leg run over was heard to utter an exclamation, and during the four hours in which he lived, was heard to sigh and grunt though unconscious the entire time. The court observed in both cases that the decedents "had a sense of feeling and to have endured pain." The record in the instant case is bare for any such facts, and the cases are therefore inapposite.
In Kaough v. Hadley, La.App. 1 Cir., 1936, 165 So. 748, the court only observed that the suffering of a minor child before death is heritable and properly recoverable. There was no contention made or discussed as to the child's having been unconscious, or of what, if any, part of the judgment awarded was on the survival action and what part was on the death action.
In Keowen v. Amite Sand & Gravel Co., La.App. 1 Cir., 1941, 4 So.2d 79, 84, the Court observed:
"They can recover moreover for their son's own suffering from the time of the accident until he died two or three hours later. He was conscious most of that time and his suffering in the face of impending death was undoubtedly very intense."
Cooper v. Blanck, La.App. Orleans, 1923, 39 So.2d 352, is only authority for the proposition that injuries inflicted before birth when the child is en ventre sa mere and of which the child dies after birth are compensable by damages. There is no discussion of the problem before the Court.
Andrus v. White, La.App. 1 Cir., 1958, 101 So.2d 7, is no authority for the plaintiff, but fully substantiates defendant's position. The same case on writs in the Supreme Court was reversed in part on a point involving hospital and funeral expenses, but was not affected on the point under discussion. In the Andrus case, the trial court found that the decedent suffered a crushing head injury and was unconscious for 40 hours before dying. While the trial court recognized the principle urged herein by American General, it awarded "nominal damages" in the sum of $500. This court disallowed this award, on the ground that courts cannot assume nor substitute an unsupported belief that the decedent must have suffered, in the absence of competent testimony that should and could have been produced if it were true.
Diane Wilcox testified that Carol White was riding on the rear seat of the Volkswagen. There is no dispute that after the accident, Carol White was still on the back seat, Diane Wilcox was still on the front seat, and Jane Erwin was thrown from the car and was lying to the rear of the Volkswagen.
Mr. A. L. Thompson was the first man on the scene besides the occupants of the vehicles involved. He testified:
"Q. `Did you speak at alldid you assist in placing the little girl who was in the back seat of the Volkswagen into the ambulance?' A. `Yes, sir.'
"Q. `Can you describe her condition when you were taking her to the ambulance and putting her in?' A. `Well, I don'tI'd say she was unconscious. I mean, she didn't appear to know anything, and she was limp and helpless.'
"Q. `Did she ever respond the way the Wilcox girl did when you talked to her?' A. `No.' (Italics added.)"
*783 Frank Church of Jackson arrived at the scene of the accident in a wrecker, but rode in the ambulance with Carol White from the scene of the accident to the Clinton Infirmary. He testified that he helped put Carol in the ambulance, and that she was breathing and alive when she was placed in the ambulance, but that she died just as the ambulance arrived at the Infirmary. He testified that she uttered no sounds on the way to Clinton, that her eyes were open on the way to Clinton but that she did not blink them or move then around, and that she did not move.
Since it cannot be said that the trial court was manifestly erroneous in his finding that Carol White was unconscious after the accident, we have no alternative but to deny the claim of her mother for damages under the survival action.
Arthur E. White, the natural father of Carol White, was awarded the sum of $10,000 for the loss of his daughter, "said sum to be deposited in the registry of this Court and must not be used in any way by Arthur E. White and in fact can never be used except upon the permission of the Court and then, only for the benefit of the two surviving sisters, Janice White and Theresa White, and said money must not and will not ever be transferred to Montana, the residence of the father, Arthur White, and Arthur White is not to benefit in any way from said money."
The quoted restrictions in this judgment were taken from the trial court's written reasons for judgment of April 29, 1960, and these are the restrictions which Arthur E. White seeks to have deleted from the judgment by his answer to the appeal of American General.
American General agrees with Arthur E. White that there is no basis in law for awarding a judgment for wrongful death to the surviving father of the deceased, and at the same time restricting the use and control of the award for the benefit of the surviving sisters of the deceased.
Arthur E. White was not present at the trial of this case. In lieu of his testimony, his counsel introduced 13 stipulations into evidence. The precise stipulation made with reference to these 13 statements was that all counsel concerned agreed that if Arthur E. White had been present at the trial, he would testify as to what the statements contained; the truth of these statements was not admitted.
These stipulations admit that Arthur E. White went into military service within a month after the birth of Carol E. White and her twin sister; the record shows that Carol E. White was born on September 3, 1944; and that from 1944 until the date of Carol White's death in 1959, Arthur E. White had seen her on only one occasion.
Stipulation 6 and 7 state that Arthur E. White received money from his uncle to move his family to Montana, but that his wife declined to accompany him to Montana because of her belief that the climate in Montana would make the children sick. Henry E. Palmer testified that the reason his wife did not go to Montana was because she received no money for this purpose from Arthur E. White.
Stipulation 7 shows that Arthur E. White and his wife were divorced in 1953. Arthur E. White has since remarried.
Stipulation 8 states that Arthur E. White sent money to Carol E. White for summer camp, vacations and school, birthdays and Christmas, and from time to time sent clothes. Henry E. Palmer testified that since he married his wife in 1953 until Carol was killed, Arthur E. White sent $60 to Carol's twin, Janice, nothing to Carol or her sister Theresa. White did send $50 on two occasions, once to help pay for tonsil operations on Carol and Janice when they were seven years old. Even when money was requested by Carol's mother, it was not forthcoming from White. Even when Mrs. Palmer filed proceedings under the Uniform Reciprocal Enforcement of Support Act, LSA-R.S. 13:1641 et seq., she received no money from her husband *784 Apparently, Carol never received any money from her father.
Stipulation 11 states that Arthur E. White received short notice of Carol's death and could not make transportation arrangements to attend the funeral, but he wired $200 to his other daughters to be applied to the funeral, or if the funeral costs were to be paid by insurance to be given to his daughters. Henry Palmer testified that Arthur White telephoned he was going to wire $250 to the children after Carol's death, but the only money received was $130 from Arthur White's mother.
Palmer testified that White never wrote his children a letter in his own handwriting and he never had visited the children. One week before Carol was killed, her sister Janice called White on the telephone and Janice asked Carol if she wanted to "talk to Daddy"; Carol replied "No, he's not my Daddy." Mrs. Palmer made Carol go to the telephone and Carol said, "Why, hello, I though you were dead. I hadn't heard from you in so long."
After Carol's death, White created a trust fund for the benefit of his two surviving daughters. The corpus of the trust is to be any settlement or judgment arising out of this suit. It is, therefore, a contingent thing, for which Mr. White pays nothing. White makes himself trustee of the trust, with the provision that he is to receive 25% per annum of the income of the trust as compensation.
In his written reasons of April 29, 1960, the trial Court stated, "I may say that if there were parental love in this case it must have been faint, for no matter what caused the separation, nothing should keep a father from lavishing love on his children."
The only question presented is, what damages has Arthur White proved? In this connection, it is clear from the record that Arthur White has not proved any damages beyond a nominal amount. We feel that $500 is sufficient. See Kaough v. Hadley, La.App. 1 Cir., 165 So. 748; Joyner v. Williams, La.App. 1 Cir., 35 So.2d 812; Russell v. Taglialavore, La.App. 2 Cir., 153 So. 44; Poindexter v. Service Cab Co., La. App. 2 Cir., 161 So. 40.
The lower court held that Henry E. Palmer, the stepfather of Carol White, was not entitled to recover damages in view of Article 2315 of the Civil Code, LSA. Article 2315 provided in part:
"Every act whatever of man that caused damage to another, obliges him by whose fault it happened to repair it; the right of this action shall survive in case of death in favor of the children, including adopted children * * * or spouse of the deceased, or either of them, and in default of these in favor of the surviving father and mother or either of them, * * * The survivors above mentioned may also recover the damages sustained by them by the death of the parent of child * * *."
Since Carol White was an unmarried minor child without issue, but survived by both a natural mother and a natural father, there is no statutory law or jurisprudence to permit recovery by the stepfather. Article 2315, being the sole source of authority, provides that the suit is to be instituted by "the surviving father and mother."
The analogies cited by counsel for Henry E. Palmer in other areas of Louisiana law, such as workmen's compensation cases, cannot prevail against the established and clear law on the subject.
For the above and foregoing reasons, it is ordered, adjudged and decreed that the judgment of the District Court is amended by reducing the award to Mrs. Margaret H. Palmer to the sum of $12,500 for the loss of love, companionship and affection of her daughter, Carol White.
It is further ordered, adjudged and decreed that the judgment of the District Court awarding Mrs. Margaret H. Palmer *785 $5,000 for pain and suffering endured by her daughter, Carol White, before her death be reversed and the judgment be annulled and set aside, and damages as to this claim denied.
It is further ordered, adjudged and decreed that the judgment of the District Court in favor of Arthur E. White, awarding him the sum of $10,000, is amended by reducing the award to $500.
It is further ordered, adjudged and decreed that the judgment of the District Court dismissing the suit of Henry Earl Palmer be affirmed.
Judgment affirmed in part and amended in part.
NOTES
[1] In appellants exhaustive brief the following cases where awards were made to parents for the loss of children were cited as being complete from January 1951 to August 25, 1960. (1) Brown et ux. v. Wertz, La.App., 2 Cir., 1951, 52 So.2d 54. Consolidated for trial with the case of Bradford v. Wertz, La.App., 52 So.2d 47, was that of both surviving parents of Asaph B. Brown, also killed in the same accident. He was 23 years of age, had returned from a 3 year service in the Army, was single, and had plans to be married, having already bought his wedding clothes. Award: $3,000 to each parent, plus specials.

(2) Todd et ux. v. New Amsterdam Cas. Co., La.App., Orleans, 1951, 52 So. 2d 880. The parents of a three and a half year old child who died of fractures of the second and third cervical vertebrae and cerebral hemorrhage fifteen minutes after she arrived at the hospital were awarded $3,750 each, plus special damages. In this suit, the survival action was rejected on the basis that the child was unconscious from the time of accident until death.
(3) Himes v. Avinger, La.App., 2 Cir., 1956, 85 So.2d 304. Both parents of a 15 year old boy sued in this case. The boy was studious and diligent in his school work and made excellent grades. His earnings were placed in savings in anticipation of his attending Grambling College. His conduct had been exemplary and commendable, a matter of joy and happiness to his parents. He was close to his parents, had excellent character, and was above average in intelligence and industry. Award: $10,000 to each parent.
(4) Brooks v. State Farm Mutual Automobile Ins. Co., La.App., 2 Cir., 1957, 91 So.2d 403. In this case, Judge Hardy of the Second Circuit observed that the proof in this case was not nearly as strong as that in the Himes case cited above. The deceased child was six years old and the only son of his parents, apparently a bright, healthy, normal, affectionate child. Award: $7,500 to each of the two parents.
(5) Watson v. McEacharn, La.App., 2 Cir., 1957, 99 So.2d 138. Both parents sued for the death of their son, 20 years of age. The father was an unskilled laborer with a modest income, having previously suffered the loss of his right hand which adversely affected his ability to obtain and retain employment. The mother was a housewife. They were the parents of six children, including the deceased son. The son earned $125 to $130 weekly working for a pipeline, and made substantial contributions to the support of his familyat times as much as half of his earnings. He had an excellent reputation, was energetic, very industrious, was close to his family; his conduct was exemplary and commendable. Award: $12,500 to each parent.
(6) Randall v. Baton Rouge Bus Co., La.App., 1 Cir., 1959, 114 So.2d 98, rehearing denied August 31, 1959; certiorari granted October 9, 1959. In this suit, both parents sued for the deaths of their only children, aged seven and three. The district court awarded $15,000 to each parent for the death of each minor child. The Court of Appeal for the First Circuit reduced the award to $12,000 per child per parent.
(7) Freeman v. Audubon Insurance Company, La.App., 1 Cir., 1960, 120 So. 2d 105. Both parents sued for the death of their 22 year old son. The record showed that the son lived with the parents until approximately two months prior to his death. At the time of his death, he was employed at a monthly salary of $150, of which he contributed from $50 to $75 per month to the support of his father and mother. Funeral expenses of $309 were included in the final judgment. Award: $12,000 to each parent.
(8) Boyd v. Sutton, La.App., 2 Cir., 1960, 120 So.2d 350. Both parents brought this suit for the death of their 19 month old son, one of their 11 children. Award: $7,500 to each parent, plus actual funeral expenses.